238 P.3d 162

**STATE of Hawai'i, Petitioner–
Plaintiff–Appellee,**

v.

**Kenneth DELOS SANTOS, Respondent–
Defendant–Appellant.**

No. 29337.

Supreme Court of Hawai'i.

Aug. 19, 2010.

Stephen K. Tsushima, Deputy Prosecuting Attorney, for petitioner-plaintiff-appellee.

Kirsha K.M. Durante, Deputy Public Defender, (Taryn R. Tomasa, Deputy Public Defender, on the briefs) for respondent-defendant-appellant.

MOON, C.J., NAKAYAMA, DUFFY and RECKTENWALD, JJ. and ACOBA, J., concurring separately.

Opinion of the Court by NAKAYAMA, J.

On April 1, 2010, this court accepted a timely application for a writ of certiorari filed by petitioner-plaintiff-appellee, the State of Hawai'i ("the prosecution"), on February 18, 2010, requesting that this court review the

Intermediate Court of Appeals' ("ICA") November 24, 2009 judgment on appeal, entered pursuant to its November 9, 2009 Memorandum Opinion reversing the Family Court of the First Circuit's ("family court") August 6, 2008, Judgment of Conviction and Sentence.[1] Oral argument was held on June 3, 2010.

In its application for writ of certiorari before this court,[2] the prosecution presents the following question:

> Did the ICA gravely err in holding the family court was wrong by admitting into evidence a police officer's testimony regarding the complainant's hearsay statement as an excited utterance?

For the following reasons, we hold that the ICA gravely erred by determining that the complainant's statement that "my boyfriend beat me up" was not admissible as an excited utterance. We also hold that the admission of this statement does not violate the confrontation clause of article I, section 14 of the Hawai'i Constitution. Therefore, we vacate the ICA's judgment on appeal and remand to the family court for a new trial.

## I. BACKGROUND

Kenneth Delos Santos ("Delos Santos") was convicted of Abuse of Family or Household Members, in violation of Hawai'i Revised Statutes (HRS) § 709–906 (Supp. 2008).[3] The prosecution claimed that on March 26, 2008, Delos Santos struck his girlfriend ("the Complainant") in the face and stomped on her thigh in their apartment in Waikiki. The crucial piece of evidence supporting Delos Santos' conviction was Officer Jason Kubo's ("Officer Kubo") testimony summarizing the Complainant's statements when he arrived at the scene shortly after the incident. The family court admitted these statements as excited utterances. The relevant testimony is described below.

**1.** The Honorable Rhonda A. Nishimura presided.

**2.** Delos Santos did not file a memorandum in opposition to certiorari.

**3.** HRS § 709–906 provides in relevant part:

### A. August 5, 2008, Hearing

The family court held a Hawai'i Rules of Evidence (HRE) Rule 104 hearing in part to determine the admissibility of the Complainant's statements to the police. At the hearing, two witnesses testified.

The Complainant testified that Delos Santos was her boyfriend and that they were living together in a hotel in Waikiki at the time of the incident. She recalled that she and Delos Santos were involved in an incident on March 26, 2008. She did not remember calling the police, making a written statement to the police, or "anything that happened that night[.]"

The prosecution then called Jason Kubo, an officer of the Honolulu Police Department. He testified that he responded to an "argument type call" at approximately 1:07 in the morning. When he arrived, he "met with [s]ecurity down stairs." He then went up to the room. When he arrived at the room with security, he knocked on the door, entered the room, and observed the Complainant and Delos Santos. Officer Kubo described the Complainant's emotional state as "clearly in a state of fear and crying." Officer Kubo "immediately" spoke with her, and she "basically said that her boyfriend beat her up." The deputy prosecuting attorney also elicited the following testimony from Officer Kubo:

> Q. Is that specifically what she said?
>
> A. Yes—well, after speaking with her and getting the full facts and circumstances, basically she said she was arguing with Mr. Delos Santos about some other matters and while in the room he struck her once in her face hitting her in her jaw with enough force to cause her to fall.
>
> While on the ground, the victim actually said that while lying on the ground he was—he had stomped on her right thigh several times causing pain.

Officer Kubo testified that her emotional state did not change at any point during this

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member. . . .

For the purposes of this section, "family or household member" means . . . persons jointly residing or formerly residing in the same dwelling unit.

interaction, and that she "continued crying and at all times [he] kept trying to calm her down." Officer Kubo also obtained a signed written statement from the Complainant.[4] He testified that he "had to keep calming" the Complainant down.

On cross-examination, Officer Kubo testified that the incident occurred at 1:00 a.m. and that he arrived at the hotel at around 1:10 in the morning. During his interview with the Complainant, he asked a series of questions listed on the written statement, including the question "what happened." He also testified that "being a police officer," he wanted the Complainant to answer the questions on the written statement.

At the close of the hearing, the trial court determined preliminarily that the prosecution laid the proper foundation to admit the statements under the excited utterance exception to hearsay. The court stated that:

> What we have down is the Complaining Witness' demeanor during her utterances. It was not the situation where this is a lengthy narrative or lengthy recitation, that he did observe her demeanor, that she was continuously crying, that he attempted to calm her down.

## B. August 6, 2008, Trial

At trial, the prosecution called the Complainant and Officer Kubo as witnesses. The Complainant testified that Delos Santos was her boyfriend at the time of trial and the incident. They lived together at the time of the incident at a hotel in Waikiki. She testified that she did not remember anything that happened on the night of the incident. She testified that she woke up the next afternoon in Delos Santos' car feeling pain from a hangover and that her legs were sore from rollerblading.

On cross-examination, she testified that she did not remember anything because she drinks a lot, and was drinking on the night of the incident. She did not remember how much she drank that night, but remembered drinking at a hotel and then a bar.

Officer Kubo also testified at the trial. His testimony was similar to the Rule 104 hearing, with some differences. He testified that he received a call from dispatch at "[a]pproximately 1—about 1:05" and that it took him a "few minutes" to get to the hotel. He testified that he arrived at the hotel "shortly after about 1:05." He met with security downstairs and took the elevator to the room with security and other officers.[5] When arriving at the room, he met with the Complainant, Delos Santos, and another waiting security officer. When he arrived, Delos Santos was in the threshold of the door to the hotel room. He testified that he went in the room to investigate a crime. After entering the room, Officer Kubo noticed that the Complainant was "really shaken, crying and appeared to be in a lot of pain." He also observed her limping. Officer Kubo testified that before the Complainant said anything, he "asked her what happened when [he] went in there...." Officer Kubo testified that he asked her "what happened" because of "the apparent pain that she was in and also for officer safety reasons...." At the time he asked, the Complainant was "crying" and "shaken[.]" Over objection, Officer Kubo testified that she responded that "my boyfriend beat me up." He then "walked with her further into the room, [and] knowing that she was in pain also, [he] wanted to sit her down." He walked her to a table "inside the room" and "sat her down." He then asked "what do you mean[.]" The deputy prosecuting attorney elicited the following testimony about the conversation:

> Q. And at the time you asked her, what do you mean, why did you ask her that question?
>
> A. I need to know what happened, especially for our safety-wise also in there.

---

4. The written statement was not entered into evidence at trial and neither party has cited to the written statement in the application to this court or in their briefs to the ICA. Officer Kubo testified that the written statement was consistent with what the Complainant told him.

5. He testified that none of the other officers met with the Complainant.

Q. And at the time that you asked her what happened, what was her emotional state like?

A. Still she was shaken, crying. And I needed a lot of time to try to calm her down also.

Q. And how did she respond to your question, what do you mean?

* * *

A. She basically said that she got into an argument with her boyfriend and while inside the apartment—hotel room, rather, he punched her once in the face with enough force to her to fall onto the ground. While on the ground, he stomped on her right thigh.[6]

During his conversation with the Complainant at the table, he could see the right side of "her lower chin area starting to swell" and that her chin had "a red mark. . . ." She also "kept favoring her leg" and he noticed a "two-inch-by-two-inch red mark" on her right thigh area. The mark was "circular." He also noticed "slight abrasions to her knee." Officer Kubo left the room approximately forty-five minutes after he met the Complainant, and testified that the Complainant's emotional state did not change during that period. He testified that the Complainant "had no smell of alcohol and she—other than being scared, frightened, crying and in pain, . . . appeared totally sober to me." Additionally, he testified that the Complainant was unsteady on her feet when he left because of the pain to her right thigh.

At the close of trial, the jury found Delos Santos guilty of Abuse of Family and Household Members, and the family court subsequently placed Delos Santos on probation for two years and sentenced him to ten days in prison with credit for time already served. The family court stayed the sentence pending appeal. Delos Santos subsequently appealed the trial court's judgment.

## C. The ICA's November 24, 2009, Judgment On Appeal

Delos Santos appealed to the ICA raising three points of error: 1) the "family court erroneously admitted [the Complainant]'s purported statements to Officer Kubo as an excited utterance under HRE 803[;]" 2) "Delos Santos was not afforded meaningful opportunity to cross-examine [the Complainant], [and] the family court erred in admitting the statement[;]" and 3) absent "the admission of [the Complainant]'s purported statements to Officer Kubo, the State failed to adduce any evidence that Delos Santos had abused [the Complainant]."

Without addressing Delos Santos' second point of error, the ICA, in its majority opinion,[7] held that the "family court was wrong and violated Delos Santos' rights to a fair trial and due process by admitting into evidence Officer Kubo's testimony regarding Complainant's hearsay statements as excited utterances, under HRE 803(b)(2)." *State v. Delos Santos*, No. 29337, 121 Hawai'i 471 (Haw.App. Nov. 9, 2009) (mem.) at 8–9. It correctly laid out the foundational requirements for the excited utterance exception to the hearsay rule: 1) a startling event or condition occurred; 2) "the statement was made while the declarant was under the stress of excitement caused by the event or condition;" and 3) "the statement relates to the startling event or condition." *Id.* at 5 (block quote formatting omitted) (quoting *State v. Machado*, 109 Hawai'i 445, 451, 127 P.3d 941, 947 (2006)).

The ICA held that the prosecution failed to establish the second requirement. *Id.* at 7. It held that the nature and circumstances of the Complainant's statement indicated non-spontaneity. *Id.* at 6. The ICA focused on Officer Kubo's testimony that he asked the Complainant what happened before she made her statements, he needed to calm the Complainant down when he asked her what happened, and "a security officer was already waiting at the scene when Officer Kubo arrived. . . ." *Id.* at 6–7. Although the ICA

---

6. We refer to the Complainant's initial statement that "my boyfriend beat me up" as her "first statement" and her response to the question "what do you mean" as her "second statement."

7. The Honorable Daniel R. Foley and Katherine G. Leonard signed the majority opinion, and the Honorable Alexa D.M. Fujise filed a dissent, which is described below.

recognized that the Complainant "was in a state of agitation throughout Officer Kubo's investigation and there was a short interval of time between the incident and the arrival of the officer at the scene[,]" the ICA held that those factors did not "mitigate against [its] conclusion." *Id.* at 7 (citing *State v. Moore*, 82 Hawai'i 202, 221–22, 921 P.2d 122, 142–43 (1996)).

Additionally, the ICA analogized *Machado*, 109 Hawai'i at 451, 127 P.3d at 947. It noted that in *Machado*, the complaining witness was "pretty emotional" when the officers arrived and that the "complaining witness remained visibly upset as she described to the sergeant what had transpired." *Delos Santos*, mem. op. at 8. Furthermore, only a short time had passed when the complainant in *Machado* gave her statement to the police. *Id.* This court held that the statements were not excited utterances because "the complaining witness's statement 'involved a lengthy narrative of the events of an entire evening,' 'was detailed, logical, and coherent,' and 'was not delivered under ... life threatening physical conditions.'" *Id.* at 8 (quoting *Machado*, 109 Hawai'i at 452, 127 P.3d at 948). The ICA held that the "facts underlying *Machado* were substantially similar to the facts in this case." *Id.*

After holding that the Complainant's statements should not have been admitted as excited utterances, the ICA held that "without Officer Kubo's testimony about Complainant's hearsay statements, the State can not adduce substantial evidence to sustain Delos Santos' conviction." *Id.* at 9. The ICA reversed the family court's August 6, 2008, Judgment of Conviction and Sentence.

While the dissent "agree[d] that the more detailed statement made by the complaining witness ... to the police officer in this case did not qualify for the 'excited utterance' exception to the hearsay rule, [the dissent] would [have held] that [the Complainant]'s initial statement that 'my boyfriend beat me up,' made upon the officer's arrival, was admissible under this exception." *Delos Santos*, dissenting op. at 1 (Fujise, J., dissenting) (citing *Hilyer v. Howat Concrete Co.*, 578 F.2d 422, 424 (D.C.Cir.1978) (held bystander's statements, describing fatal accident in

response to police officer's questions as he was "so excited" he could not remember the officer's questions, admissible as excited utterances); *Bosin v. Oak Lodge Sanitary District No. 1*, 251 Or. 554, 447 P.2d 285, 290 (1968) (that statement was elicited by an inquiry is one factor to consider; "the trial judge must be given considerable lee-way of decision") (internal quotation marks and citation omitted); *United States v. Joy*, 192 F.3d 761, 766 (7th Cir.1999) ("[A] court need not find that the declarant was completely incapable of deliberative thought at the time he uttered the declaration.")).

The dissent would also have held that "admission of this initial statement was not a violation of the confrontation clauses of either the Hawai'i or United States constitutions" because the Complainant appeared at trial and Delos Santos "had the opportunity to cross-examine her, notwithstanding her testimony that she could not remember the incident in question or her statements to police." *Id.* at 1–2 (footnote omitted) (citing *United States v. Owens*, 484 U.S. 554, 559–60, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *People v. Garcia–Cordova*, 392 Ill.App.3d 468, 332 Ill.Dec. 94, 912 N.E.2d 280 (2009); *State v. Fields*, 115 Hawai'i 503, 523, 168 P.3d 955, 975 (2007)).

Finally, the dissent would have held that there was sufficient evidence to remand to the family court for a new trial because the Complainant's statement "that 'my boyfriend beat me up,' her testimony that she and Delos Santos were living together at the time and the police officer's observations of her swelling and marked chin, limp, and two-inch by two-inch circular red mark on her thigh were sufficient to support a conviction for Abuse of Family or Household Member." *Id.* at 2 (citing HRS § 709–906 (Supp.2007)).

## II. STANDARDS OF REVIEW

### A. Application For Writ Of Certiorari

■ The acceptance or rejection of an application for writ of certiorari is discretionary. HRS § 602–59(a) (Supp.2009). "In deciding whether to accept an application, this court reviews the decisions of the ICA for (1) grave errors of law or of fact or (2) obvious

inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decisions and whether the magnitude of such errors or inconsistencies dictate the need for further appeal." *State v. Wheeler*, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (citing HRS § 602–59(b)).

## B. Excited Utterance Exception To Hearsay Rule

■ This court reviews the admissibility of evidence by application of the hearsay rules under the "right/wrong" standard. *State v. Machado*, 109 Hawai'i 445, 450, 127 P.3d 941, 946 (2006); *State v. Moore*, 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996). Thus, this court reviews whether the ICA "gravely erred" by determining that the trial court's decision to admit Officer Kubo's testimony was "wrong."

## C. Constitutional Questions

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. . . . Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Fields*, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007) (internal quotation marks omitted) (quoting *State v. Feliciano*, 107 Hawai'i 469, 475, 115 P.3d 648, 654 (2005)).

## D. Sufficiency of the Evidence

■ We review the sufficiency of the evidence under the following standard:

[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and

probative value to enable a person of reasonable caution to support a conclusion." *Id.* (internal quotation marks omitted) (quoting *State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996)).

## III. DISCUSSION

The prosecution argues that Officer Kubo's testimony was admissible under the excited utterance exception to hearsay for two reasons. First, the prosecution asserts that Officer Kubo's entire summary of the Complainant's statements was admissible. Alternatively, the prosecution asserts that, at "the very least, [the] initial statement by the complainant that [Delos Santos] beat her up, made upon Officer Kubo's arrival, was admissible as an excited utterance."

We agree with the ICA that the trial court should not have admitted the Complainant's second statement as an excited utterance under *Machado*, 109 Hawai'i at 452, 127 P.3d at 948 (holding that the complainant's statement was not admissible as an excited utterance in part because it "involved a lengthy narrative of the events of an entire evening"). However, the Complainant's initial statement that "my boyfriend beat me up" was admissible as an excited utterance, and the ICA gravely erred by holding that this statement was not an excited utterance. Furthermore, the admission of the Complainant's initial statement did not violate the confrontation clause of the Hawai'i Constitution. Therefore, we reverse the ICA's judgment on appeal, and remand to the family court for a new trial.

## A. The Complainant's More Detailed Statement Was Not an Excited Utterance.

■ HRE 803(b)(2) (2002) provides that a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. To qualify as an excited utterance, the proponent of a statement must establish that: "(1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of

excitement caused by the event or condition; and (3) the statement relates to the startling event or condition." *Machado,* 109 Hawai'i at 451, 127 P.3d at 947 (citing HRE 803(b)(2) (2002)). Delos Santos did not assert that a "startling event" did not occur or that the Complainant's statement related to the startling event.[8] Thus, the crucial issue on appeal is whether the Complainant's statement was made under the stress of excitement caused by Delos Santos' physical altercation with her.

▆▆▆ The "ultimate question in these cases is 'whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event.'" *Machado,* 109 Hawai'i at 451, 127 P.3d at 947 (quoting *Moore,* 82 Hawai'i at 221, 921 P.2d at 141). The "time span between the 'startling event' and the statement to be admitted as an excited utterance" is a factor in the determination, but a short time period is not a foundational prerequisite. *Id.* (quoting *Moore,* 82 Hawai'i at 221, 921 P.2d at 141). "Other factors that courts often look to in determining whether a statement was the product of excitement include ... the nature of the event, the age of the declarant, the mental and physical condition of the declarant, the influences of intervening occurrences, and the nature and circumstances of the statement itself." *Id.* (citing *Moore,* 82 Hawai'i at 221, 921 P.2d at 141).

The prosecution asserts that the ICA gravely erred by concluding that the Complainant did not make her statement under the stress of excitement. Additionally, the prosecution asserts that the ICA's "reliance on the 'facts underlying' *State v. Machado,* 109 Hawai'i 445, 127 P.3d 941 (2006) as 'substantially similar to the facts of this case' is misplaced" because *Machado* "involved *a lengthy narrative* of the events *of the entire evening* ...." (Emphasis and italics in original.) After considering the relevant factors, the prosecution's argument is not persuasive because the prosecution failed to establish when the statement was made and whether it

was a brief spontaneous comment or a lengthy narrative which was then summarized by Officer Kubo. Therefore, the nature and circumstances of the statement indicate that the Complainant's second statement could have been the product of "reflective thought." *Machado,* 109 Hawai'i at 451, 127 P.3d at 947 (quoting *Moore,* 82 Hawai'i at 221, 921 P.2d at 141).

1. *Nature of the event*

The prosecution correctly asserts that "the nature of the event" was violent, which supports its argument that the Complainant's statement was an excited utterance. Officer Kubo testified that the Complainant told him that Delos Santos hit her in the face hard enough to fall to the ground. While on the ground, Delos Santos stomped on her thigh. During their conversation, Officer Kubo noticed that the Complainant's lower chin started to swell, she had slight abrasions on her knee, and had a two-inch by two-inch red mark on her thigh area. Thus, the nature of the event was violent, which supports the prosecution's assertion that the Complainant's statement was made without reflective thought. *See generally State v. Clark,* 83 Hawai'i 289, 297–98, 926 P.2d 194, 202–03 (1996) (holding that a complainant's statements that her husband stabbed her were admissible as an excited utterance in part because of the "violent nature of the startling event"); *Moore,* 82 Hawai'i at 222, 921 P.2d at 142 (holding that the complainant's statement that her husband shot her was an excited utterance in part because of the "violent nature of the startling event"); *People v. Swinger,* 180 Misc.2d 344, 350, 689 N.Y.S.2d 336, 341 (N.Y.Crim.Ct.1998) ("The nature of the attack on the complainant—abuse by a family member—was undeniably traumatic and could have triggered the 'excited utterance' by the complainant."). Although the incident did not rise to the level of the stabbing in *Clark* and the shooting in *Moore,* the incident was still violent, which supports admitting it as an excited utterance.

---

8. Additionally, under "generally prevailing practice, the statement itself is considered sufficient proof of the exciting event, and therefore the statement is admissible despite absence of other

proof that an exciting event occurred." 2 Kenneth S. Broun et al., *McCormick on Evidence* § 272 at 256–57 (6th ed.2006) (footnote omitted).

### 2. *The mental and physical condition of the declarant*

The mental and physical condition of the Complainant supports the prosecution's argument that her statement was not the product of reflective thought. For instance, when Officer Kubo arrived, he noticed that the Complainant was "really shaken, crying and appeared to be in a lot of pain." Additionally, at the time he asked the Complainant "what happened," the Complainant was still "shaken" and "crying." Finally, the Complainant's emotional state did not change during the forty-five minute period that Officer Kubo was at the hotel. This court has held that a declarant's statements five minutes after being stabbed were excited utterances in part because the declarant was "really shaken," obviously "scared" and "terrified," and was "trembling" and "starting to cry." *Clark*, 83 Hawaiʻi at 297, 926 P.2d at 202; *see also Machado*, 109 Hawaiʻi at 451, 127 P.3d at 947 (noting that the complaining witness "remained visibly upset as she described what had transpired"). Additionally, as discussed above, the Complainant's lower chin swelled and she had slight abrasions on her knee and a red mark on her thigh area. Thus, the Complainant's mental and physical condition supports the prosecution's argument that her statement was an excited utterance.

### 3. *Time span between the "startling event" and the statement*

The prosecution asserts that the "elapsed time between the abuse and the Complainant's statements was short as Officer Kubo was on the scene within minutes...." (Footnote omitted.) In *State v. Moore*, this court stated that "a statement made within minutes of a startling event can often fairly be characterized as the product of excitement rather than of deliberation." 82 Hawaiʻi at 221, 921 P.2d at 141; *see also Machado*, 109 Hawaiʻi at 447, 451, 127 P.3d at 943, 947 (describing ten minute time period between violent incident and police officer's arrival as "short"). The ICA did not address this fac-

tor in detail, but held that the "short interval of time between the incident and the arrival of the officer at the scene does not mitigate against our conclusion." *Delos Santos*, mem. op. at 7.

The amount of time does not weigh in favor of admitting the second statement because the prosecution did not establish when the Complainant made the second statement. Officer Kubo arrived at the apartment "shortly after about 1:05." [9] At the hearing, he testified that the incident occurred at 1:00. Although it is impossible to know exactly when the Complainant made her initial statement, at the time Officer Kubo met the Complainant, he immediately spoke with her. Because the Complainant's initial statement was the first part of their forty-five minute interaction, it is reasonable to infer that her initial statement occurred a short time after the incident. Thus, a short amount of time elapsed between the Complainant's initial statement and the incident.

However, the prosecution never established when the second statement occurred. At the hearing, Officer Kubo testified that he talked with the Complainant for at least thirty minutes. The prosecution never established when in this thirty minute window the Complainant's second statement occurred. Thus, the time period between the incident and the second statement does not support admitting the second statement as an excited utterance.

### 4. *Nature and circumstances of the statement*

The nature and circumstances of the Complainant's second statement illustrate that her statement was the product of reflective thought for two reasons.

First, the Complainant made her statements under circumstances which could indicate reflective thought. That the Complainant responded to a question after officer Kubo attempted to calm her down weighs in favor of concluding that her statement was the product of reflective thought, but does

---

9. At trial, Officer Kubo testified that he arrived at the hotel at "shortly after about 1:05...." At the hearing, he testified that he received the call

from the dispatcher at approximately 1:07 a.m., and that he arrived at the complex at 1:10.

not automatically bar its admissibility as an excited utterance. *See infra* at 140–41, 238 P.3d at 172–73; 30B Michael H. Graham, *Federal Practice & Procedure* § 7043 at 417–18 (2006) (stating that one factor in evaluating whether a statement is an excited utterance is "whether the statement was volunteered or in response to a question") (footnote omitted). Thus, the nature and circumstances of the statement weigh against admitting the second statement as an excited utterance partly because the statement was made in response to a police officer's question.

Second, the nature and circumstances of the statement weigh against admitting the second statement as an excited utterance because the record does not clearly establish whether the statement is a recitation of the events of the evening rather than a "disjointed" or "spontaneous" outburst. *See Machado,* 109 Hawai'i at 451–52, 127 P.3d at 947–48. For instance, in *Machado,* this court recognized that other "courts have held that lengthy, narrative statements are not admissible as excited utterances." *Id.* at 451, 127 P.3d at 947. It held that a witness' detailed statement was not admissible as an excited utterance because "the statement, made in response to questioning by the police, exceeded a 'truly spontaneous outburst.' " *Id.* at 452, 127 P.3d at 948 (quoting *West Valley City v. Hutto,* 5 P.3d 1, 4 (Utah Ct.App. 2000)). Instead, this court noted that the statement "was a specific and inclusive rendition of the circumstances leading up to the incident and of the incident itself" and described the statement as "detailed, logical, and coherent." *Id.* This court contrasted the inadmissible statements in *Machado* with those in *State v. Moore,* noting that the statements in *Moore* were "several brief and disjointed remarks" such as "he shot me," "he's a good man[,] I told him I was leaving him," and "keep him away from me . . . ." *Id.* (quoting *Moore,* 82 Hawai'i at 217, 921 P.2d at 137).

Similar considerations in this case indicate that the Complainant's statements were not excited utterances, because it appears that the testimony by Officer Kubo may have paraphrased some or all of a thirty minute conversation. Officer Kubo testified at trial that the Complainant *"basically* said that she got into an argument with her boyfriend and while inside the apartment—hotel room, rather, he punched her once in the face with enough force to her to fall onto the ground. While on the ground, he stomped on her right thigh." [10] (Emphasis added.) This "statement" may have been Officer Kubo's synopsis of a lengthy conversation rather than a discrete or "disjointed" statement, as in *Moore.* Thus, the nature and circumstances as adduced by the prosecution do not support admitting the statement as an excited utterance.

The prosecution attempts to distinguish *Machado* by asserting that the statements in *Machado* "involved *a lengthy narrative* of the events *of the entire evening* . . . ." (Emphasis and italics in original.) The prosecution also notes that Officer Kubo "was not allowed to recount an entire 30 to 45 minute interview with the complainant, but, rather, was limited to particular utterances of the complainant while under the stress of excitement caused by [Delos Santos'] assault on her."

The prosecution correctly observes that the police officer's statement in *Machado* is much longer than Officer Kubo's and Officer Kubo did not recount every detail of the Complainant's statement. *See Machado,* 109 Hawai'i at 447–48, 127 P.3d at 943–44 (quoting *State v. Machado,* 109 Hawai'i 424, 425–26, 127 P.3d 84, 85–86 (App.2005)). However, this argument is not persuasive given the record in the instant case, which does not establish whether Officer Kubo was repeating a short, "disjointed" statement of the type at issue in *Moore,* or whether he was summarizing a thirty minute narrative similar to that in *Machado.*

10. Officer Kubo's testimony at the pretrial hearing also suggested that he was summarizing the Complainant's comments: *"[A]fter speaking with her and getting the full facts and circumstances,* basically she said she was arguing with Mr. Delos Santos about some other matters and while in the room he struck her once in her face hitting her in her jaw with enough force to cause her to fall." (Emphasis added.)

5. *The age of the declarant*

The age of the declarant does not have any bearing on whether the statement is likely the product of reflective thought in this case. Courts evaluate the age of the declarant because "child victims of sexual abuse are generally allowed more time between the event and the statement. . . ." *Boyd v. City of Oakland,* 458 F.Supp.2d 1015, 1026 (N.D.Cal. 2006). This issue is not present in this case.

6. *The influences of intervening occurrences*

Courts evaluate "the influences of intervening occurrences" between the event and the statement. *Machado,* 109 Hawai'i at 451, 127 P.3d at 947 (citing *Moore,* 82 Hawai'i at 221, 921 P.2d at 141). The prosecution argues that "there were no intervening occurrences other than the police being called. . . ." Delos Santos did not argue in his Opening Brief that intervening occurrences influenced the Complainant to make her statement. "Intervening occurrences" did not dull the Complainant's excitement from the "startling event." Officer Kubo arrived at the apartment a "few minutes" after receiving the call from dispatch. Although a security guard waited with the Complainant before Officer Kubo arrived, there is no evidence that the security guard or Delos Santos took any action to dull the Complainant's excitement during that period of time. Therefore, there is no evidence that intervening occurrences dulled the Complainant's excitement.

7. *Totality of the circumstances*

Evaluating the totality of the circumstances, *Clark,* 83 Hawai'i at 297, 926 P.2d at 202, the Complainant's second statement was not admissible as an excited utterance because the prosecution failed to lay adequate foundation that the statement was not the product of reflective thought. Although the incident was violent and the Complainant was crying and appeared upset, the prosecution failed to adduce evidence regarding when the Complainant made the second statement and the "nature and circumstances" of the statement. *Machado,* 109 Hawai'i at 451, 127 P.3d at 947. Officer

Kubo may have summarized a lengthy narrative with the Complainant rather than reiterating a discrete statement. Therefore, under *State v. Machado,* 109 Hawai'i at 451, 127 P.3d at 947, the ICA did not gravely err by holding that the prosecution failed to establish the foundational requirements to admit the second statement as an excited utterance.

**B. The Complainant's Initial Statement That "My boyfriend beat me up" Is Admissible As an Excited Utterance.**

■ Although Officer Kubo's summary of the witness' second statement does not qualify as an excited utterance, his testimony regarding the Complainant's initial statement that "my boyfriend beat me up" does. As discussed above, the violent nature of the event, the short period of time between the incident and Officer Kubo's arrival, and the Complainant's physical and mental state support admitting the Complainant's initial statement as an excited utterance. *See supra* at 137–38, 238 P.3d at 169–70. There are three reasons that the Complainant's initial statement is admissible as an excited utterance while her later statements are not: 1) her initial statement does not summarize a longer conversation; 2) evidence that her statement was made in response to a police officer's question does not bar its admissibility as an excited utterance; and 3) the totality of the circumstances indicates that her statement was made under the stress of excitement.

1. *The Complainant's initial statement does not summarize a lengthy conversation.*

The Complainant's initial statement is admissible as an excited utterance because it is not a "lengthy narrative" as discussed in *Machado. See supra* at 139, 238 P.3d at 171.

2. *Evidence that a statement was made in response to a police officer's question does not bar its admissibility as an excited utterance.*

Although the Complainant's statement was made in response to Officer Kubo's question, this does not automatically bar its admissibil-

ity as an excited utterance. 30B Michael H. Graham, *Federal Practice & Procedure* § 7043 at 417–18 & n. 13 (2006); *People of Territory of Guam v. Cepeda,* 69 F.3d 369, 372 (9th Cir.1995) ("The fact that a statement is made in response to a question is one factor to weigh in considering the statement's admissibility, but it does not per se bar admission."). In *Machado,* this court noted that the complainant's statement *"made in response to questioning by the police,* exceeded a 'truly spontaneous outburst.'" *Machado,* 109 Hawai'i at 452, 127 P.3d at 948 (emphasis added) (quoting *Hutto,* 5 P.3d at 4). However, it did not explicitly hold that responses to police questions cannot be excited utterances.

Other Hawai'i courts and scholars have concluded that evidence that the statement is made in response to an inquiry does not automatically bar admitting the statement as an excited utterance. *See State v. Konohia,* 106 Hawai'i 517, 524, 107 P.3d 1190, 1197 (App.2005) ("The fact that some of Coral–Sands' statements were made in response to questions by the 911 dispatcher did not prevent them from qualifying as excited utterances.") (citing *People v. Roybal,* 19 Cal.4th 481, 79 Cal.Rptr.2d 487, 966 P.2d 521, 542–43 (1998)); *see also State v. Dunn,* 8 Haw.App. 238, 246, 798 P.2d 908, 912–13 (App.1990) (holding that the complainant's statements, made in response to a police officer's question, were admissible as excited utterances);[11] 2 Kenneth S. Broun et al., *McCormick on Evidence* § 272 at 259 (6th ed.2006); *Cf. Territory v. Lewis,* 39 Haw. 635, 640 (Haw.Terr.1953) (holding that defendant's statements, made in response to questions by a police officer, were part of the res gestae because they "were made under the exciting influence of said events, reasonably contemporaneous thereto and without prior opportunity for deliberation or manufacture"), *superceded by rule as recognized in*

*State v. Fetelee,* 117 Hawai'i 53, 175 P.3d 709 (2008). Therefore, the fact that the Complainant's statement responded to Officer Kubo's question does not automatically bar its admission as an excited utterance.

At the ICA, Delos Santos also asserted that the questions posed by Officer Kubo were done with "investigative intent and objective." The ICA also held that the "fact that Officer Kubo's *investigatory* questioning prompted Complainant's statements about the incident with Delos Santos strongly supports an inference that Complainant was in a reflective state at the time she described the incident to Officer Kubo." *Delos Santos,* mem. op. at 7 (emphasis added). However, the intent behind Officer Kubo's questions is not legally relevant in establishing whether a statement was made under the stress of excitement. In *State v. Machado,* this court assessed whether a statement, made in response to a police officer's question, was an excited utterance. 109 Hawai'i at 452, 127 P.3d at 948. This court did not analyze whether the question was asked with "investigative intent and objective" and we decline to adopt it as a criteria in determining whether a statement is an excited utterance. *Id.* Therefore, the fact that the Complainant responded to a question posed by Officer Kubo does not require concluding that the Complainant's initial statement was not an excited utterance.

3. *The totality of the circumstances indicates that the Complainant's statement was made under the stress of excitement.*

Evaluating the totality of the circumstances, it appears that the statement was not the product of reflective thought and therefore qualifies as an excited utterance.

Other courts have held statements made in similar circumstances are excited utterances.

---

11. Although not expressly overruled, the validity of *Dunn* was called into question in *State v. Moore.* 82 Hawai'i 202, 219, 921 P.2d 122, 139 (1996) ("It is therefore worth examining how our interpretation of the excited utterance exception has evolved to the point where, rather than looking to a short time interval between event and statement as an indicator that the declarant was still excited by the event, the ICA, in *State v.*

*Dunn,* 8 Haw.App. 238, 246, 798 P.2d 908, 912 (1990), pointed to the fact that the declarant was 'crying and visibly upset' to establish that the event had occurred only a short time before the statement was made."). *Dunn* is still valid for the proposition that a response to a police officer's question can constitute an excited utterance.

For instance, in *Fowler v. State,* 829 N.E.2d 459, 463 (Ind.2005), police officers responded to a domestic violence call and arrived at the home approximately five minutes after the incident occurred. They asked the complainant what happened, and she responded that "everything was alright." *Id.* at 462 (internal quotation marks omitted). The complainant then told the police that Fowler, the assailant, was upstairs. *Id.* The police officers found Fowler and arrested him. *Id.* When the police officers came back to talk to the complainant approximately fifteen minutes after the incident, she stated that Fowler punched her in the face multiple times and choked her. *Id.* at 462, 463. While making this statement, she "claimed to be in pain and was still crying, bleeding from the nose, and having trouble catching her breath." *Id.* at 463. The court held that the trial court did not abuse its discretion in admitting the statement as an excited utterance.

Similarly, in *State v. Robinson,* 773 A.2d 445, 447 (Me.2001), police officers responded to a domestic violence incident. When the officers arrived, they observed the complainant "in a terrified state, 'crying,' 'upset,' and 'frazzled.'" *Id.* They also noticed that "her face was red and puffy, and that she had visible red marks on her neck." *Id.* An officer "asked [her] what had happened, and she responded that [the defendant] had hit her and that he was in the bedroom." *Id.* at 448 (footnote omitted).[12] The officers arrested the defendant and interviewed the complainant approximately three to twelve minutes after they initially talked with the complainant. *Id.* The complainant "was still crying and appeared terrified and 'very, very upset.'" *Id.* She again told the police officer that the defendant "had hit her and this time, more specifically, that he had 'thrown [her] onto the living room floor' and had 'punched, kneed, kicked and choked' her." *Id.* (footnote omitted).

The court held that the complainant's statements were admissible as excited utterances because the complainant "was still 'very, very upset' at the time that she made

the statement[,]" and "appeared terrified and was still sobbing from the events of that night...." *Id.* at 450. Additionally, the court noted that the complainant "had visible bodily injuries[,]" and did not have "the time nor the opportunity to consult with anyone, and there was no evidence that she had had the time for reflection." *Id.* Thus, in a situation similar to this case, the court concluded that a complainant's response to an inquiry from a police officer was admissible as an excited utterance.

These cases are analogous to this case and indicate that statements made to police officers, even if in response to a question, are admissible as excited utterances if the complainant is still under the stress of excitement. *See also People v. Gwinn,* 366 Ill. App.3d 501, 303 Ill.Dec. 715, 851 N.E.2d 902, 916–17 (2006) (holding that the trial court did not abuse its discretion in admitting as an excited utterance the complainant's statement to a police officer approximately fifteen minutes after the father of her children punched her in the face).

In the present case, under the totality of the circumstances, the Complainant's first statement to the police officers was an excited utterance. The nature of the event was violent. The Complainant was still in a state of excitement as indicated by Officer Kubo's testimony that she was crying, scared, and had a red mark on her thigh and a swollen lower chin. Furthermore, the statement was made a short time after the incident. Thus, although the statement was given in response to Officer Kubo's question, the factors outlined in *State v. Machado* indicate that the Complainant's initial statement was admissible as an excited utterance.

The ICA also held that "the fact that a security officer was already waiting at the scene when Officer Kubo arrived, suggesting that order had been restored there, and Officer Kubo's testimony that he needed to calm Complainant down when he asked her what happened suggests that Complainant's statements were not spontaneous." *Delos Santos,* mem. op. at 7. These facts do not require

---

**12.** The defendant did not challenge the admissibility of this first statement. *Robinson,* 773 A.2d at 448 n. 2.

concluding that the statement was not an excited utterance.

The ICA's discussion of the security guard waiting with the Complainant until Officer Kubo's arrival does not negate the Complainant's mental and physical state when Officer Kubo arrived shortly after the incident. Officer Kubo testified that the Complainant was "shaken" and crying when he arrived. He testified that the Complainant was "scared" and "frightened" throughout the interview. Additionally, Delos Santos was in the threshold of the door to the room when Officer Kubo arrived, which also indicates that the Complainant was under the stress of excitement when she made her initial statement.

Furthermore, although Officer Kubo testified that he *tried* to calm the Complainant down for "a lot of time," this does not indicate that her statements lacked spontaneity. Officer Kubo testified that despite his attempts to calm the Complainant down, her emotional state remained the same throughout the interview, and that she was scared, frightened, crying, and in pain. Therefore, Officer Kubo's attempt to calm the Complainant down does not indicate that her statement was the product of reflective thought.

Although neither party nor the ICA cited to it, in *State v. Beyer*, this court held that a complainant's statement to police officers after being questioned was not an excited utterance. 72 Haw. 469, 472, 822 P.2d 519, 521 (1991), *overruled by, State v. Moore*, 82 Hawai'i 202, 220–21, 921 P.2d 122, 140–41 (1996) (holding that "a 'very short' time interval between a startling event and an excited utterance . . . is not a foundational prerequisite to the admissibility of the statement under HRE Rule 803(b)(2)"). At first, the complainant "was extremely nervous and upset and would not answer the police officer's questions but, after 10 or 15 minutes and smoking . . . two cigarettes, she calmed down and stated that she and the [defendant] had been living together for about four months, that he had not paid his share of the rent, that he had disappeared for several days and so she threw his belongings out in the yard, and that later, while she was sleeping, the appellant came in and struck her in the face." *Id.* at 470–71, 822 P.2d at 520. This court

held that the "statement was not proximately caused by the excitement generated from the event, but as a result of questioning by the police after they had calmed the person down." *Id.* at 472, 822 P.2d at 521. *Beyer* is distinguishable because in *Beyer* the complainant had calmed down, while the Complainant in this case was still crying and "shaken" when she made the statement. Although Officer Kubo attempted to calm the Complainant down, she made her statement under the stress of excitement. Thus, Officer Kubo's attempt to calm the Complainant down does not indicate her statement was not spontaneous.

Therefore, we hold that the ICA gravely erred by concluding that the Complainant's initial statement was not an excited utterance.

**C. The Admission Of the Complainant's Statements Did Not Violate the Confrontation Clause Of the Hawai'i Constitution.**

The ICA did not reach Delos Santos' argument that the admission of Officer Kubo's testimony violated his right to confront the Complainant. *Delos Santos,* mem. op. at 2. Because we conclude that the Complainant's first statement was admissible as an excited utterance, we address this argument.

Delos Santos asserts that admission of the statement violated his right to confrontation under article I, sections 5 and 14 of the Hawai'i Constitution because Hawai'i's confrontation clause requires a "meaningful opportunity" to cross-examine the declarant about the subject matter of a hearsay statement. (Citing *State v. Fields*, 115 Hawai'i 503, 528, 168 P.3d 955, 980 (2007.)) Delos Santos argues that: 1) the Complainant's statements were testimonial; 2) the Complainant was unavailable at trial; and 3) he did not have a "meaningful opportunity" to cross-examine the Complainant at trial due to her claimed memory loss. In response, the prosecution asserts that the admission of the Complainant's hearsay statements did not violate the confrontation clause because Delos Santos had a sufficient opportunity to cross-examine the Complainant at trial.

(Citing *Fields*, 115 Hawai'i at 523–24, 168 P.3d at 975–76.) As discussed below, we hold that the admission of the Complainant's hearsay statements did not violate the confrontation clause because the Complainant appeared for cross-examination at trial. Therefore, we do not decide whether the Complainant's statements were testimonial, and the application of the two-part tests in *Crawford* or *Roberts* is unnecessary. *See Fields*, 115 Hawai'i at 528, 168 P.3d at 980.

Article I, section 14 of the Hawai'i Constitution provides the accused with the right "to be confronted with the witnesses against the accused...." Haw. Const. art. I, § 14. In *State v. Fields*, this court adopted the following standard for assessing whether testimonial hearsay violates the confrontation clause: "where a hearsay declarant's unavailability has been shown, the testimonial statement is admissible for the truth of the matter asserted only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement." *Fields*, 115 Hawai'i at 516, 168 P.3d at 968 (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Importantly, this court also held that "Hawai'i's confrontation clause, like its federal counterpart, is not implicated where ... the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement." *Id.* at 517, 168 P.3d at 969. This court found the following language in *Crawford* compelling:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Id.* (footnote omitted) (emphasis added) (quoting *Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct. 1354).

Relying on numerous cases from other jurisdictions, this court held that "*Crawford* does not preclude the admission of a prior out-of-court statement where the hearsay declarant is cross-examined at trial about the out-of-court statement." *Id.* at 523, 168 P.3d at 975 (footnote omitted). Under *Fields*, the relevant inquiry is whether the Complainant "appear[ed] at trial and [was] cross-examined about [her] statement." *See Fields*, 115 Hawai'i at 517, 168 P.3d at 969.[13]

Neither this court nor the United States Supreme Court has specifically determined whether a witness who is cross-examined by the defendant but testifies that she cannot remember the subject matter of her out-of-court statements or making her prior statements "appears for cross-examination at trial" under *Crawford* and *Fields*. *See Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct. 1354; *Fields*, 115 Hawai'i at 517, 168 P.3d at 969. Delos Santos asserts that *Fields* "extended *Crawford*'s holding" by requiring "substantive and meaningful" cross-examination. He asserts that he did not have a "meaningful" opportunity to cross-examine the Complainant because, unlike the declarant in *Fields*, the Complainant could not remember anything about the incident. *See Fields*, 115 Hawai'i at 523–24, 168 P.3d at 975–76. He points to footnote 13 of our opinion in *Fields*, where we observed that "the dispositive question becomes whether the witness can nevertheless *recall the subject matter of the statement*, notwithstanding the loss of memory as to the statement itself." *Id.* at 526 n. 13, 168 P.3d at 978 n. 13 (emphasis added). This court noted that if "the accused has the opportunity to elicit the witness' testimony as to the subject matter of the statement on cross-examination at trial, the accused's right of confrontation has been satisfied." *Id.*

This argument is not persuasive because language in *Fields* also supports concluding that a witness need not recall the subject matter of her statements to appear for cross-examination at trial, and our adoption of *Crawford* supports interpreting *Fields* in this manner. For instance, this court held that

---

**13.** Any difference between *Fields'* and *Crawford's* formulations is aesthetic. A witness that "appears for cross-examination at trial" under *Crawford* is a witness that "appeared at trial and was cross-examined about her statement" under *Fields*. *See Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct. 1354; *Fields*, 115 Hawai'i at 517, 168 P.3d at 969.

"Hawai'i's confrontation clause, *like its federal counterpart,* is not implicated where, as here, *the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement."* *Id.* at 517, 168 P.3d at 969 (emphasis added). When analogizing *Robinson v. State,* 271 Ga.App. 584, 610 S.E.2d 194, 195 (2005), this court also observed:

> In the case at bar, as in *Robinson,* the reluctant witness testified to an extent, despite claiming memory loss as to material elements of the alleged crime. *Furthermore, neither Staggs nor the hearsay declarants in Robinson testified as to the subject matter of their prior out-of-court statements. Insofar as the Robinson court thus concluded that Crawford was inapplicable, we are similarly persuaded that the same result should be reached here.*

*Fields,* 115 Hawai'i at 519, 168 P.3d at 971 (emphasis added).

Although *Fields* is ambiguous regarding whether a witness must recall the subject matter of her statements, our adoption of *Crawford* as the test for whether a witness "appears at trial for cross-examination" resolves this ambiguity. *See id.* at 517 & n. 9, 168 P.3d at 969 & n. 9. To the extent that *Fields* can be interpreted as indicating that a witness must testify about the subject matter of a statement to satisfy the confrontation clause, we reject this interpretation and instead hold that, under *Crawford,* a witness who appears at trial and testifies satisfies the confrontation clause, even though the witness claims a lack of memory that precludes them from testifying about the subject matter of their out-of-court statement. As discussed below, this conclusion is supported by United States Supreme Court precedent, the precedent of other jurisdictions applying *Crawford,* and the policies espoused in *Fields.*

First, concluding that a witness appears for cross-examination at trial despite a memory loss is supported by United States Supreme Court precedent, which this court relied on to interpret the Hawai'i Constitution's confrontation clause in *Fields. Id.* Although Delos Santos' challenge comes under the Hawai'i Constitution, we have relied on *Crawford* in determining whether a witness appears for cross-examination at trial. *Id.* Thus, the Supreme Court's construction of the federal confrontation clause is persuasive on this issue.[14]

The Supreme Court's construction of the federal confrontation clause indicates that a witness who forgets both the underlying events and her prior statements nonetheless appears for cross-examination at trial. For instance, in *Crawford,* the Supreme Court drew the following inference from the historical application of the confrontation clause: "the Framers would not have allowed admission of testimonial statements of a witness who *did not appear at trial* unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354 (emphasis added). The Supreme Court also observed that "[o]ur cases have thus remained faithful to the Framers'· understanding: Testimonial statements of witnesses *absent from trial* have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 S.Ct. 1354 (emphasis added). In a footnote, the Supreme Court confirmed that "when the declarant *appears for cross-examination at trial,* the Confrontation Clause *places no constraints at all on the use of his prior testimonial statements." Id.* at n. 9 (emphasis added) (citing *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). Thus, *Crawford* indicates that regardless of a witness' inability to remember

14. The concurring opinion asserts that federal and state case law applying *Crawford* is "immaterial" because it does not "implicate the established jurisprudence construing our state constitution's confrontation clause." Concurring opinion at 157, 238 P.3d at 189. We respectfully disagree because in *Fields* this court adopted *Crawford* as this jurisdiction's test for whether a witness appears for cross-examination at trial.

*See Fields,* 115 Hawai'i at 517 & n. 9, 168 P.3d at 969 & n. 9. *Fields* also examined the case law of other jurisdictions applying *Crawford.* Therefore, case law of the United States Supreme Court and other jurisdictions applying *Crawford* is not "wholly irrelevant" to whether Delos Santos' right to confront the Complainant was violated in this case. *See* Concurring opinion at 157, 238 P.3d at 189.

the subject matter of her statements, the witness' "appearance for cross-examination at trial" satisfies the confrontation clause.[15]

The Supreme Court's pre-*Crawford* decisions support a similar conclusion. For instance, in *California v. Green*, the Supreme Court held that "the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." 399 U.S. at 164, 90 S.Ct. 1930. The Supreme Court did not reach the question of whether the witness' "apparent lapse of memory so affected [the defendant]'s right to cross-examine as to make a critical difference in the application of the Confrontation Clause...." *Id.* at 168–69, 90 S.Ct. 1930. However, it stated that:

> [W]e note that *none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial.* The concern of most of our cases has been focused on precisely the opposite situation—situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial.

*Id.* at 161, 90 S.Ct. 1930 (emphasis added).

Justice Harlan filed a concurring opinion, and would have reached the issue of whether the witness' failure to remember the events affected the defendant's right to confront the witness. Justice Harlan would have held that:

> *The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available.*

*Id.* at 188, 90 S.Ct. 1930 (Harlan, J., concurring) (emphasis added).

In *Owens*, the Supreme Court observed that the question left unanswered in *Green* was "squarely presented," and the Court agreed "with the answer suggested 18 years ago by Justice Harlan." *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). The Supreme Court held that the "Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* (internal quotation marks omitted) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). The Court also held that it "is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931–932 (J. Chadbourn rev.1970)) the very fact that he has a bad memory." *Id.* Finally, the Court found it unnecessary to apply *Roberts*:

> We do not think such an inquiry is called for *when a hearsay declarant is present at trial and subject to unrestricted cross-ex-*

---

**15.** Delos Santos asserts that this court required "that the declarant must not only be present at trial, but must be able to address the statement by defending or explaining it." (Citing *Fields*, 115 Hawai'i at 517, 168 P.3d at 969.) Delos Santos refers to our quotation of the following sentence in *Crawford*: "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Fields*, 115 Hawai'i at 517, 168 P.3d at 969 (quoting *Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct. 1354). This argument is not persuasive because "such an interpretation both ignores the fact that the Court's 'language still focuses on presence

and ability to act without requiring that the record show the declarant actually did defend or explain the statement,' ..., and is at odds with the Court's more explicit assertion that 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements,'...." *State v. Holliday*, 745 N.W.2d 556, 565–66 (Minn.2008) (internal citation omitted) (quoting *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. 1354). Thus, under *Crawford* and *Fields*, a declarant need not actually "defend" or "explain" the statement.

*amination.* In that situation, as the Court recognized in *Green,* the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.

*Id.* at 560, 108 S.Ct. 838 (emphasis added) (citing *Green,* 399 U.S. at 158–161, 90 S.Ct. 1930).

Although the factual scenario in *Owens* is distinguishable from this case because the witness in *Owens* remembered making his prior identification, the principles elucidated in these decisions support concluding that a witness appears for cross-examination at trial despite her inability to recall the incident and making her prior statements. *See State v. Holliday,* 745 N.W.2d 556, 566 (Minn.2008) (acknowledging that *Owens* and *Green* are distinguishable but concluding that "these cases suggest what was settled in *Crawford*—that 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.' "). The Supreme Court's adoption of the reasoning in Justice Harlan's concurring opinion in *Green* indicates that the confrontation clause is satisfied when the witness appears at trial and is available for unrestricted cross-examination. *See Owens,* 484 U.S. at 560, 108 S.Ct. 838; *Crawford,* 541 U.S. at 60 n. 9, 124 S.Ct. 1354. Thus, Supreme Court precedent, which this court has relied upon in delineating the requirements of the Hawai'i Constitution's confrontation clause, indicates that a witness "appears for cross-examination" despite a nearly total loss of memory regarding the incident and her statements.

Second, courts in other jurisdictions applying *Crawford* have held that a testifying witness appears for cross-examination at trial despite a nearly total lapse in memory.

For instance, in *State v. Holliday,* the defendant chased and shot at a person, but killed a different person than the one he intended. 745 N.W.2d at 560. The prosecution called the intended victim at trial "as a witness to testify as to information he gave in an interview with Sergeant Charles Adams in April 2006 and in his meetings with Assistant Hennepin County Attorney Robert Streitz in May 2006 and September 2006." *Id.* at 561. The witness claimed he could not remember his interview with the police officer or the May meeting with the county attorney, "and, after viewing a document from the September meeting, [the witness] said he remembered talking to someone in the county attorney's office but could not remember what the conversation was about." *Id.* On cross-examination, the witness "agreed that his regular ecstasy use possibly affected his ability to remember." *Id.* The police officer testified "as to what [the witness] said in the April 2006 interview, including [his] claim that he was appellant's intended victim when Reitter was shot." *Id.* A legal services specialist was present at the September meeting between the witness and the county attorney. *Id.* She testified that, at the September meeting, the county attorney read the witness a report of the witness' April interview with the police officer and two memoranda documenting the county attorney's meetings with the witness. *Id.* She testified that the witness affirmed the contents of these documents at the meeting. *Id.* At trial, the legal service specialist read portions of these documents into evidence. *Id.*

On appeal, the defendant claimed that "the admission of [the witness]'s prior statements violated the Confrontation Clause because [the witness]'s memory loss precluded the opportunity to cross-examine [the witness] about the circumstances surrounding his prior statements and the contents of those statements." *Id.* at 565. The court observed that language "from the Supreme Court's *Crawford* decision indicates that the admission of a witness's prior statements does not violate the Confrontation Clause where the witness appears for cross-examination and claims that he or she cannot remember either making the statements or the content of the statements." *Id.* Applying *Crawford,* the court held that the admission of the witness' statements did not violate the confrontation clause because "[t]he Confrontation Clause is satisfied by a declarant's appearance at trial for cross-examination, and it is for the factfinder to evaluate a declarant's credibility." *Id.* at 567–68. Thus, despite the witness' failure to testify regarding the underlying

events or recall his prior statements, the admission of his prior statements did not violate the confrontation clause.

In *Bush v. State*, the Supreme Court of Wyoming held that the admission of prior statements from a witness that had no recollection of her father killing her mother did not violate the confrontation clause. 193 P.3d 203, 212 (Wyo.2008). After the witness' mother died when the witness was very young, the witness was placed with the department of family services. *Id.* at 207. The witness' grandparents noticed that the witness exhibited unusual behavior, and sought treatment for her at a mental health hospital. *Id.* During her treatments, when the witness was almost three years old, the witness made statements to her counselor and psychiatrist implicating her father in the murder of her mother. *Id.* At trial, the witness was eighteen years old, and testified that "she could not remember any of the events in 1990." *Id.* at 207–08. She also testified that "the counseling she had as a child pretty much made her unable to remember what had happened." *Id.* at 208. Defense counsel did not cross-examine her. *Id.* The prosecution called the witness' psychiatrist and counselor, and they testified about the witness' incriminating statements. *Id.*

The court held that the admission of the witness' hearsay statements did not violate the confrontation clause because the witness "appeared at trial, was placed under oath and testified. Thus, [defendant] was confronted with the witness and had the opportunity to cross-examine her and the Sixth Amendment was satisfied." *Id.* at 211. Relying on persuasive cases, the court held that "what is important for purposes of the Sixth Amendment is that the defendant is confronted by the witnesses against him at trial and has the opportunity to cross-examine them." *Id.* at 212.

Thus, other courts have held that the admission of hearsay statements does not violate the confrontation clause despite the declarant's complete failure to remember the subject matter of the statements. *See also Mercer v. United States*, 864 A.2d 110, 113, 114 & n. 4 (D.C.2004) (holding that the "the requirements of *Crawford* were met" where

the witness was "unable to recall in any meaningful way the events of the day of the shooting, her testimony before the grand jury, or her testimony in the first trial"); *People v. Perez*, 82 Cal.App.4th 760, 766, 98 Cal.Rptr.2d 522, 526 (2000) ("Even though [the witness] professed total inability to recall the crime or her statements to police, and this narrowed the practical scope of cross-examination, her presence at trial as a testifying witness gave the jury the opportunity to assess her demeanor and whether any credibility should be given to her testimony or her prior statements. This was all the constitutional right to confrontation required."); *United States v. Keeter*, 130 F.3d 297, 302 (7th Cir.1997) (holding that the admission of a witness' affidavit and grand jury testimony did not violate the confrontation clause even though the witness claimed an inability to remember anything but his own name). The cases discussed above indicate that "when a witness is presented for cross-examination, the Confrontation Clause does not bar the admission of a prior statement." *State v. Legere*, 157 N.H. 746, 958 A.2d 969, 978 (2008); *Bush*, 193 P.3d at 211, 212 (holding that the admission of a witness' out-of-court statements did not violate the confrontation clause because the witness "appeared at trial, was placed under oath and testified"). Therefore, the admission of the Complainant's testimony did not violate the Hawai'i Constitution's confrontation clause.

Finally, the policies outlined in *State v. Fields* are not undermined in this case. In distinguishing the factual circumstances of *Fields*, Delos Santos generally asserts that he did not have an adequate opportunity to test the "credibility and veracity" of the Complainant's prior statements. In *Fields*, this court noted that the "trier of fact was provided with adequate information to test the credibility and veracity of Staggs' prior statement insofar as it could have reasonably inferred that (1) Staggs' drunken state rendered her prior statement inaccurate or unreliable, and/or (2) Staggs was not an innocent victim but an aggressive participant in the incident who, while angry at *Fields*, gave a false statement to the police." *Fields*, 115 Hawai'i at 523, 168 P.3d at 975. This policy

of providing the trier of fact with adequate information to test the credibility of an out-of-court declarants' statements is not undermined by allowing a witness with no recollection of the incident or her statements to testify. For instance, in this case, Delos Santos was able to show that the Complainant was drunk that evening. Thus, although a witness may not recall the incident or her prior statements, the defendant may still impugn the credibility of the witness.

Based on the analysis above, we hold that the admission of the Complainant's first statement that "my boyfriend beat me up" did not violate the Hawai'i Constitution's confrontation clause.

The concurring opinion observes that HRE Rule 802.1 requires that the declarant is subject to cross-examination at trial about the subject matter of the statement.[16] Concurring opinion at 165–66, 238 P.3d at 197–98. The concurring opinion then asserts that Hawai'i case law and the "commentary to HRE 802.1 suggest[ ] that the same definition of the phrase 'subject to cross-examination' should be employed for purposes of the

confrontation clause." *Id.* at 166, 238 P.3d at 198. We respectfully disagree.

Initially, the concurring opinion asserts that the "commentary to HRE 802.1 suggests that the same definition of the phrase 'subject to cross-examination' should be employed for purposes of the confrontation clause." *Id.* However, the commentary to HRE Rule 802.1,[17] on its own, cannot bind this court's construction of a constitutional provision.

The concurring opinion next asserts that, in *Fields* and pre-*Fields* cases, this court adopted HRE Rule 802.1 as its test for whether a witness appeared at trial for cross-examination. Concurring opinion at 166–67, 238 P.3d at 198–99. However, *Fields'* adoption of *Crawford* indicates that this court has not adopted HRE Rule 802.1 as its test for whether a witness appears at trial for cross-examination. *See supra* at 165, 238 P.3d at 197. As discussed above, courts applying *Crawford* have concluded that a witness without recollection of the subject matter of her statements still appears for cross-examination. Therefore, we do not interpret *Fields* to require cross-examination regarding the subject matter of the statement to satisfy the

---

**16.** The concurring opinion also asserts that under "this court's precedent interpreting the Hawai'i Constitution, the proposition that the mere physical presence of a hearsay declarant at trial does not take the defendant out of the realm of protection afforded him or her by the confrontation clause has been established." Concurring opinion at 158, 238 P.3d at 190. The concurring opinion rejects this court's reading of *State v. Sua*, 92 Hawai'i 61, 75, 987 P.2d 959, 973 (1999), in *Fields*. Respectfully, these arguments are not persuasive in light of our opinion in *Fields*.

First, the concurring opinion asserts that this court misread *Sua* in *Fields* because if the declarant's "mere physical presence at trial was dispositive, as the majority holds in the instant case, *Sua II*'s analysis regarding the two-prong test is a lengthy and preliminary discussion amounting to dicta—*Roberts* should not have been addressed." Concurring opinion at 159, 238 P.3d at 191. However, *Fields* established that a "fair reading of *Sua* indicates that this court rejected Sua's confrontation clause argument on two independent and dispositive, but coequal grounds: (1) both prongs of the *Roberts* test were met; *and* (2) Sua had a sufficient opportunity for cross-examination." *Fields*, 115 Hawai'i at 526, 168 P.3d at 978 (citing *Sua*, 92 Hawai'i at 75, 987 P.2d at 973). This opinion has not altered our

interpretation of *Sua* in *Fields*, and we decline to overrule *Fields'* interpretation of *Sua*.

Second, the concurring opinion asserts that this court's interpretation of *Sua* in *Fields* is erroneous because it ignores that this court has held that unavailability may be demonstrated by loss of memory. Concurring opinion at 159–60, 238 P.3d at 191–92. The concurring opinion then concludes that our "confrontation clause jurisprudence necessarily contemplates reaching the two-pronged tests stemming from *Roberts* and *Crawford*, where the hearsay declarant is physically present at trial but suffers from a loss of memory." *Id.* at 160, 238 P.3d at 192. This argument was rejected in *Fields*. In *Fields*, this court held that Hawai'i's confrontation clause "is not implicated where … the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement." *Fields*, 115 Hawai'i at 517, 168 P.3d at 969. Thus, this court's confrontation clause jurisprudence does not "necessarily contemplate" reaching the unavailability prong of *Roberts* and *Crawford* when a witness claims a loss of memory.

**17.** Additionally, we note that Officer Kubo's summary of the Complainant's statements was admitted as an excited utterance under HRE Rule 803(b)(2).

confrontation clause. To the extent that our cases have concluded otherwise, they were displaced by our adoption of *Crawford* in *Fields*.

### D. The Proper Relief Is To Remand For a New Trial.

■ At the ICA, Delos Santos asserted that "[a]part from the inadmissible evidence regarding Officer Kubo's testimony of what [the Complainant] purportedly told him, the State failed to adduce any evidence that Delos Santos had abused [the Complainant]. As such, there was no admissible evidence that Delos Santos had intentionally, knowingly, or recklessly physically abused [the Complainant], a family or household member." In light of the discussion above, this argument is not persuasive and therefore we remand the case to the family court for a new trial.

When considering whether sufficient evidence supports a conviction, courts consider the evidence in the "strongest light for the prosecution" and the "test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (block quote formatting omitted) (quoting *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* (internal quotation marks omitted) (quoting *Eastman*, 81 Hawai'i at 135, 913 P.2d at 61).

Even disregarding the Complainant's more detailed statement, her statement that "my boyfriend beat me up," "her testimony that she and Delos Santos were living together at the time and the police officer's observations of her swelling and marked chin, limp, and two-inch by two-inch circular red mark on her thigh were sufficient to support a conviction for Abuse of Family or Household Member." *Delos Santos*, dissenting op. at 2 (Fujise, J., dissenting). Therefore, we remand this case to the family court for a new trial.

## IV. CONCLUSION

Based upon the foregoing analysis, we vacate the ICA's judgment on appeal and remand to the family court for a new trial.

### Concurring Opinion by ACOBA, J.

I would hold that (1) the confrontation clause of the Hawai'i Constitution, article I, sections 5 and 14, is implicated where a witness appears at trial for cross-examination, but is unable to remember the subject matter of his or her out-of-court statement; (2) in this case, the statement, "My boyfriend beat me up," is non-testimonial hearsay, and, thus, the confrontation clause of the Hawai'i Constitution requires a showing of the "unavailability" of the declarant[1] and that the statement "'bear[s] adequate indicia of reliability[,]'" *Sua II*, 92 Hawai'i at 71, 987 P.2d at 969 (quoting *State v. Moore*, 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996) (quoting *State v. Ortiz*, 74 Haw. 343, 361, 845 P.2d 547, 555–56 (1993) (citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531))); and (3) the admission of that statement does not violate the confrontation clause because both parts of the test are satisfied in the instant case.

Accordingly, I concur in the result only.[2]

*Id.* at 71, 987 P.2d at 969 (internal quotation marks, brackets, and citations omitted).

---

1. Although the Supreme Court has held subsequent to *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that a showing of unavailability is not required for certain hearsay exceptions, inasmuch as this court may extend the protections of the Hawai'i Constitution beyond federal standards, *State v. Sua*, 92 Hawai'i 61, 73, 987 P.2d 959, 971 (1999) (*Sua II*), "this court has remained resolute that, under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants."

2. I agree with the majority, insofar as it concludes that (1) the initial statement made by the complainant, "[M]y boyfriend beat me up," is admissible as an excited utterance; (2) the more detailed statement made by the complainant was not an excited utterance; and (3) ultimately, the admission of the complainant's initial statement did not violate the confrontation clause of the Hawai'i Constitution. Majority opinion at 136–37, 238 P.3d at 168–69.

## I.

On March 27, 2010, Respondent/Defendant–Appellant Kenneth Delos Santos (Respondent) was charged by complaint with abuse of a family or household member, Hawai'i Revised Statutes (HRS) § 709–906 (Supp.2008).[3] The charge arose from an incident occurring on March 26, 2008. Prior to trial, the Family Court of the First Circuit (the court) held a Hawai'i Rules of Evidence (HRE) Rule 104 hearing.

At the hearing, the complainant testified that Respondent was her boyfriend and that they were living together in a hotel on March 26, 2008. The complainant further testified that she did not remember anything that happened on that night, including calling the police or filing a written statement. Officer Jason Kubo (Officer Kubo) testified on behalf of Petitioner/Plaintiff–Appellee State of Hawai'i (the prosecution). According to Officer Kubo, on March 26, 2008, at approximately 1:07 in the morning, he responded to an "argument type call" "[s]hortly after the call came in." Upon arriving at the hotel room, he found that the complainant was "clearly in a state of fear and crying." Officer Kubo testified that he spoke with the complainant "immediately" upon arriving and she "said that her boyfriend beat her up." When asked if that was specifically what she said, Officer Kubo answered:

> A. Yes—well, after speaking with [the complainant] and getting the full facts and circumstances, ... she said she was arguing with [Respondent] about some other matters and while in the room he struck her once in her face hitting her in the jaw with enough force to cause her to fall.
>
> While on the ground, [the complainant] actually said that while lying on the ground[,] ... he had stomped on her right thigh several times causing pain.

As to the foregoing oral statements, the court preliminarily determined at the hearing that the prosecution had laid the proper foundation for the excited utterance exception to hearsay.

At trial, the prosecution called the complainant as a witness. The complainant again testified that she did not remember anything that happened on that night, including calling the police or filing a written statement. When the complainant was asked on cross-examination, why she was unable to remember the night of the alleged incident, she stated that "[she] drink[s] a lot." She testified that, on that night, she did not remember how much she drank, but that she had "started off at the hotel and then [drank] at a bar." The last thing she remembered was being at the bar.

Officer Kubo's testimony at trial differed somewhat from his testimony at the hearing. Officer Kubo testified that he arrived at the hotel after responding to an "argument-type call" at approximately 1:05 a.m. According to Officer Kubo, when he arrived at the room, he met the complainant and "immediately noticed that [the complainant] was really shaken, crying and appeared to be in a lot of pain" because "[s]he was limping."

The prosecution then asked Officer Kubo, "Upon your first initial contact with [the complainant], what if anything did she say to you?" Defense counsel objected on the grounds that Officer Kubo's testimony constituted hearsay and that the prosecution had failed to lay the proper foundation for the excited utterance exception. Defense counsel further contended "that even if the [c]ourt allow[ed] the witness to testify [as] to excited utterance, it will be a violation of [Respondent's] right to confront the witness[.]" Defense counsel stated that because the complaining witness "doesn't remember anything[,] ... essentially, she's not available for cross-examination even though she's physically present." The court permitted voir dire and direct examination resumed. According to Officer Kubo, he had asked her "what happened" and the complainant re-

---

**3.** HRS § 709–906 provides in relevant part:

> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.] ...
>
> For the purposes of this section, "family or household member" means spouses or recipro-

cal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

sponded, "[M]y boyfriend beat me up." Officer Kubo explained that he had asked her that question because of "the apparent pain that she was in and also for officer safety reasons[.]"

## II.

Because I agree that the initial statement made by the complainant, "[M]y boyfriend beat me up," is admissible as an excited utterance,[4] I discuss further whether the admission of that statement violates Respondent's right to confrontation under the Hawai'i Constitution.

Prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the determination of whether the admission of a hearsay statement of an unavailable declarant violated the confrontation clause of the Hawai'i Constitution was governed by a two-prong test set forth in *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531. In *Roberts*, the Supreme Court held that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.'" *Id.* According to *Roberts*, "reliability [could] be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

As explained by this court, subsequent to *Roberts*, however, the Supreme Court held in several cases that a showing of unavailability is not required for certain hearsay exceptions. *See State v. McGriff*, 76 Hawai'i 148, 156, 871 P.2d 782, 790 (1994) (explaining that the "Supreme Court [ ] has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions") (citing *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (statements of a non-testifying co-conspirator may be introduced against the de-

fendant regardless of the declarant's unavailability at trial)); *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (unavailability not required for excited utterance exception). But this court has "parted ways with the United States Supreme Court which has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions." *McGriff*, 76 Hawai'i at 156, 871 P.2d at 790 (citations omitted). Thus, under our confrontation clause jurisprudence, this court has "remained resolute that under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants." *Sua II*, 92 Hawai'i at 71, 987 P.2d at 969 (brackets omitted).

Accordingly, this court's adaptation of the *Roberts* test has been explained as follows:

> [T]he confrontation clause restricts the range of admissible hearsay in two ways. First, the prosecution must either produce, or demonstrate the unavailability of, a declarant whose statement it wishes to use against a defendant. Second, upon a showing that the witness is unavailable, only statements that bear adequate indicia of reliability are admissible.

*Id.* (quoting *Moore*, 82 Hawai'i at 223, 921 P.2d at 143 (quoting *Ortiz*, 74 Haw. at 361, 845 P.2d at 555–56 (citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531))). This court has acknowledged that "'[u]navailability may be demonstrated by a showing of loss of memory.'" *Id.* (quoting *State v. Apilando*, 79 Hawai'i 128, 137, 900 P.2d 135, 144 (1995) (citing *Tsuruda v. Farm*, 18 Haw. 434, 438 (Haw. Terr.1907))) (emphasis, ellipsis, and brackets omitted). Additionally, "reliability" can be demonstrated in two ways. "First, reliability may be inferred without more if it 'falls within a firmly rooted hearsay exception.... Alternatively, reliability may be demonstrated upon a showing of particularized guaran-

---

4. As stated, I agree with the majority that the more detailed statement provided to Officer Kubo was not admissible.

tees of trustworthiness." *Id.* (brackets, internal quotation marks, and citation omitted).

Then, in *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, the Supreme Court overruled *Roberts,* insofar as it applied to testimonial hearsay. According to *Crawford,* the history behind the Sixth Amendment supported two important inferences. "First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. *Crawford* stated that the history of the Sixth Amendment led to the second proposition "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54. *Crawford* noted that Supreme Court cases have "remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 S.Ct. 1354 (footnote omitted).

*Crawford* ruled that, "[w]here testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. With regard to nontestimonial hearsay, *Crawford* explained that it would be "wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id.*

In *State v. Fields,* 115 Hawai'i 503, 516, 168 P.3d 955, 968 (2007), this court held that, "[t]o the extent that our cases have predicated the admissibility of testimonial hearsay on conformance with the now-abandoned 'reliability' test set forth in *Roberts, Crawford* invalidates them." (Emphasis omitted.) *Fields* adopted the test for the admissibility of testimonial hearsay, to the effect that, "where a hearsay declarant's unavailability

has been shown, the testimonial statement is admissible for the truth of the matter asserted only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement." *Id.* (citing *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354). With respect to non-testimonial hearsay, however, this court acknowledged that *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), placed non-testimonial hearsay "beyond the reach of the federal confrontation clause." *Fields,* 115 Hawai'i at 516, 168 P.3d at 968. However, because *Crawford* afforded the states flexibility with respect to non-testimonial hearsay, *see supra, Fields* expressly "reaffirm[ed] *Roberts*' continued viability with respect to nontestimonial hearsay." *Id.*

The foregoing indicates that our versions of *Roberts* and *Crawford* apply in instances where the declarant is unavailable at trial for cross-examination. In my view, under this court's confrontation clause jurisprudence, a declarant who is physically present at trial but unable to recall the subject matter of his or her hearsay statement must be deemed unavailable for cross-examination at trial, at least as to that statement. If a declarant is unavailable for cross-examination, then we must next determine whether the hearsay statement sought to be admitted is testimonial or non-testimonial in nature. Where the statement is testimonial, the statement may not be admitted unless the "hearsay declarant's unavailability has been shown," and even then, "only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement." *Id.* (citing *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354). On the other hand, if the statement is non-testimonial, the statement may not be admitted unless the prosecution "demonstrate[s] the unavailability of[ the] declarant[,]" and that the statement "bear[s] adequate indicia of reliability." *Sua II,* 92 Hawai'i at 71, 987 P.2d at 969 (internal quotation marks and citations omitted). In this case, the complainant was unable to recall the subject matter of her statement. Thus, I go on to consider whether the state-

ment, "[M]y boyfriend beat me up," was testimonial or non-testimonial in nature.[5]

### III.

### A.

In *Davis*, the Supreme Court consolidated *Davis v. Washington*, No. 05–5224, and *Hammon v. Indiana*, No. 05–5705. The Court determined whether statements made to law enforcement personnel during a 911 call or at the scene were "testimonial" and therefore, subject to the requirements of the confrontation clause of the Sixth Amendment. *Davis*, 547 U.S. at 817, 126 S.Ct. 2266. In *Davis v. Washington, No. 05–5224*, the relevant statements were made to a 911 emergency operator. When the operator asked the caller, Michelle McCottry (McCottry), what was going on, McCottry replied, "He's here jumpin' on me again." *Id.* She stated that he was "usin' his fists." *Id.* During the call, the operator learned that Davis had "run out the door" after he had hit her. *Id.* at 818, 126 S.Ct. 2266 (brackets omitted). The operator informed McCottry that the police would first check the area for Davis, and then come and talk to her. *Id.*

The police arrived within four minutes of the 911 call and observed McCottry in a shaken state as she frantically gathered her belongings and children so that they could leave the residence. *Id.* The police also noticed "fresh injuries on her forearm and her face[.]" *Id.* (internal quotation marks and citations omitted). "The State charged Davis with felony violation of a domestic no-contact order." *Id.* At trial, the State's only two witnesses were the police officers who had responded to the 911 call. *Id.* Although the police officers were able to testify that McCottry's injuries appeared to be recent, they were unable to testify as to the cause of those injuries. *Id.* at 818–19, 126 S.Ct. 2266. McCottry did not appear to testify at the trial and a recording of McCottry's conversation with the 911 operator was admitted over Davis' objection based on the confrontation

clause of the Sixth Amendment. *Id.* at 819, 126 S.Ct. 2266.

In *Hammon v. Indiana*, No. 05–5705, the police responded to a reported domestic disturbance. *Id.* When the police arrived at the residence of Amy and Hershel Hammon, they found Amy on the front porch, "appearing 'somewhat frightened,' but she told them that 'nothing was the matter[.]'" *Id.* (some internal quotation marks and citation omitted). Amy gave the police permission to enter the home where they observed a gas heater emitting flames and pieces of broken glass on the ground in front of the unit. Meanwhile, Hershel "told the police that he and his wife had 'been in an argument' but 'everything was fine now' and [that] the argument 'never became physical.'" *Id.* (some internal quotation marks and citation omitted). While one of the officers remained with Hershel, the other officer spoke with Amy in the living room. *Id.*

After providing her account, Amy filled out a "battery affidavit" in which she handwrote the following: "Broke our Furnace & shoved me down on the floor into the broken glass. Hit me in the chest and threw me down. Broke our lamps & phone. Tore up my van where I couldn't leave the house. Attacked my daughter." *Id.* at 820, 126 S.Ct. 2266 (internal quotation marks and citation omitted). Hershel was subsequently charged with domestic battery and with violating his probation. *Id.* Amy did not appear at Hershel's bench trial. *Id.* "The State called the officer who had questioned Amy, and asked him to recount what Amy told him and to authenticate the affidavit." *Id.* "Hershel's counsel repeatedly objected to the admission of this evidence." *Id.* "Nonetheless, the trial court admitted the affidavit as a present sense impression, and Amy's statements as excited utterances[.]" *Id.* (internal quotation marks and citations omitted).

In assessing whether the statements admitted in *Davis*, No. 05–5224, and *Hammon*, No. 05–5705, violated the defendants' right to

---

5. The majority, on the other hand, maintains that a declarant is available for cross-examination, even if he or she is unable to recall the subject matter of his or her out-of-court statement. *See* discussion *infra*. Thus, according to the majority, the confrontation clause is not implicated in the instant case inasmuch as the majority maintains that the declarant was available for cross-examination notwithstanding her memory loss.

confrontation under the Sixth Amendment, the Court stated that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* at 821, 126 S.Ct. 2266. The Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S.Ct. 2266. On the other hand, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

With respect to McCottry's statements in *Davis*, No. 05-5224, the Court concluded "that the circumstances of McCottry's interrogation objectively indicate[d] its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 828, 126 S.Ct. 2266. The Court reasoned that (1) McCottry had spoken about the events as they were actually happening as opposed to describing past events, *id.* at 827, 126 S.Ct. 2266 (brackets, emphasis and citation omitted), (2) "McCottry's call was plainly a call for help against bona fide physical threat[,]" *id.*, (3) "the nature of what was asked and answered[,] . . . viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past[,]" *id.* (emphasis omitted), and (4) a certain lack of formality was evidenced by the fact that "McCottry's frantic answers were provided . . . in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe[,]" *id.*

The Court noted however, that "a conversation which begins as an interrogation to determine the need for emergency assistance" could "evolve into testimonial statements[.]" *Id.* at 828, 126 S.Ct. 2266 (internal quotation marks and citation omitted). According to the Court, in *Davis*, No. 05-5224,

for example, the emergency appears to have ended once "the operator gained the information needed to address the exigency of the moment . . . (when Davis drove away from the premises)." *Id.* When the 911 "operator then told McCottry to be quiet, and proceeded to pose a battery of questions[, i]t could readily be maintained that, from that point on, McCottry's statements were testimonial[.]" *Id.* at 828–29, 126 S.Ct. 2266. However, the Court made clear that it was "asked to classify only McCottry's early statements identifying Davis as her assailant," and not the later statements. *Id.* at 829, 126 S.Ct. 2266.

With respect to the statements in *Hammon*, No. 05-5705, the Court reached the opposite conclusion. The Court determined that the statements were testimonial in nature because "[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer should have done." *Id.* at 830, 126 S.Ct. 2266 (emphasis omitted). According to the Court, the testimonial nature of the statements was clear because (1) "the interrogation was part of an investigation into possibly criminal past conduct[,]" *id.* at 829, 126 S.Ct. 2266; (2) "[t]here was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything," and in fact, "[w]hen the officers first arrived, Amy told them that things were fine, and there was no immediate threat to her person[,]" *id.* at 829–30, 126 S.Ct. 2266 (citations omitted); and (3) "[w]hen the officer questioned Amy for the second time, and elicited the challenged statements, he was not seeking to determine (as in *Davis* ) 'what is happening,' but rather, 'what happened[,]' " *id.* at 830, 126 S.Ct. 2266.

### B.

The statement in the instant case, "[M]y boyfriend beat me up," is non-testimonial in nature because it was "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency."

*Id.* at 822, 126 S.Ct. 2266. Conversely, the circumstances did not objectively indicate that the question, "[W]hat happened?" was asked for the "primary purpose of . . . establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Id.* At the hearing, Officer Kubo testified that he spoke with the complainant "immediately" and she said "that her boyfriend beat her up." According to Officer Kubo's testimony, he asked the complainant "what happened" because of "the apparent pain that she was in and also for officer safety reasons[.]" Having been confronted by the complainant who was in a state of fear, crying, and seemingly in pain, his initial question was necessary to resolve a present emergency situation.

As in *Davis*, No. 05–5224, "the nature of what was asked and answered[,] . . . viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past[,]" for the purposes of prosecution. *Id.* at 827, 126 S.Ct. 2266. Furthermore, like *Davis*, No. 05–5224, the complainant's emotional state indicated a lack of formality in the question which elicited the response, "[M]y boyfriend beat me up." *See id.* (noting the lack of formality as evidenced by the fact that "McCottry's frantic answers were provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe").

Unlike the facts from *Hammon*, No. 05–5705, here it is not evident from "the circumstances that the [initial question] was part of an investigation into possibly criminal past conduct[.]" *Id.* at 829, 126 S.Ct. 2266. The complainant did not tell the police "that things were fine[.]" *Id.* at 829–30, 126 S.Ct. 2266 (citation omitted). To the contrary, according to Officer Kubo, the complainant was crying and in a state of fear. Therefore, the officers had reason to believe that there was an "immediate threat to her person." *Id.* at 830., 126 S.Ct. 2266 Based on the foregoing, the circumstances objectively indicate that the initial question asked by Officer Kubo was to "enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S.Ct.

2266. Thus, that statement was non-testimonial hearsay.

## IV.

Having determined that the complainant's initial statement in the instant case is non-testimonial hearsay, the confrontation clause of the Hawai'i Constitution requires a showing that the complainant was both unavailable and that the statement bore adequate indicia of reliability. *See supra.* Here, "[a]lthough [the complainant] was present at trial, [she] was unable to recollect any substantive elements of [her prior statement] and, therefore, was 'unavailable' by virtue of [her] loss of memory." *Sua II*, 92 Hawai'i at 73, 987 P.2d at 971 (citation omitted). At the HRE Rule 104 hearing, the complainant testified that she was unable to remember the specific statements admitted in the instant case. According to the complainant, (1) she did not "remember calling the police" on March 26, 2008, and (2) she did not remember "writing a statement for the police." More importantly, at trial, when asked on direct examination what happened on March 26, 2008, the complainant responded "I don't remember." When asked whether she "remember[ed] writing a statement for the police[,]" she responded, "I don't remember." When defense counsel had the opportunity to cross-examine the witness, the complainant testified that she did not remember because she "drink[s] a lot." She testified that she remembered drinking "at the hotel and then at the bar," but the last thing she remembered was being at the bar. When defense counsel asked the complainant if that was all she could remember, the complainant responded, "That's all I remember." Based on the foregoing, the witness was unavailable.

Turning to the second part of our adaptation of the *Roberts* test, the statement, "[M]y boyfriend beat me up," bore adequate indicia of reliability inasmuch as "reliability may be inferred without more" by the fact that the statement "falls within a firmly rooted hearsay exception[,]" *id.* at 71, 987 P.2d at 969, here, the excited utterance exception. Having met both parts of the *Roberts* test, the admissibility of the statement, "[M]y boyfriend beat me up," did not violate Respon-

dent's right to confrontation under the Hawai'i Constitution.

## V.

In *Fields,* the majority held that "a trial court's admission of a prior out-of-court statement does not violate the Hawai'i Constitution's confrontation clause where the declarant *appears at trial and the accused is afforded a meaningful opportunity to cross-examine the declarant about the subject matter of that statement.*" *Fields,* 115 Hawai'i at 528, 168 P.3d at 980 (emphasis added). Accordingly, in the instant case, Respondent argued on appeal that under *Fields,* he did not have a "'meaningful' opportunity to cross-examine the [c]omplainant because … the [c]omplainant could not remember anything about the incident."

The majority acknowledges that "[n]either this court nor the United States Supreme Court has specifically determined whether a witness who … testifies that she cannot remember the subject matter of her out-of-court statements or making her prior statements 'appears for cross-examination' under *Crawford* or affords the accused 'a meaningful opportunity' to cross-examine the declarant under *Fields.*" Majority opinion at 144, 238 P.3d at 176. The majority then holds that a declarant who is merely physically present at trial for cross-examination satisfies the confrontation clause even if he or she cannot remember the subject matter of his or her statements. *See id.* at 145, 238 P.3d at 177.

In support of its holding, the majority argues that (1) its holding is supported by "United States Supreme Court precedent, which this court relied on to interpret the Hawaii Constitution's confrontation clause in *Fields,*" *id.* at 145, 238 P.3d at 177, (2) "courts in other jurisdictions applying *Crawford* have held that a testifying witness is available for cross-examination despite a nearly total lapse in memory[,]" *id.* at 147, 238 P.3d at 179, and (3) "the policies outlined in *Fields* are not undermined in this case[,]" *id.* at 148, 238 P.3d at 180. Hence, in the instant case, the majority extends *Fields* further and ignores *Fields'* reference to a "meaningful opportunity to cross examine

the declarant about the subject matter of the statement." *Fields,* 115 Hawai'i at 528, 168 P.3d at 980.

According to the majority, "[u]nder *Fields,* the relevant inquiry is whether the [c]omplainant 'appeared at trial and was cross-examined about her statement.'" Majority opinion at 144, 238 P.3d at 176 (quoting *Fields,* 115 Hawai'i at 517, 168 P.3d at 969 (brackets omitted) (emphasis added)). I respectfully disagree with what, in my view, is an unwarranted extension of *Fields* and a failure to adhere to precedent regarding the confrontation clause of the Hawai'i Constitution. I would hold that the confrontation clause of the Hawai'i Constitution is implicated where a hearsay declarant is physically present at trial, but unable to remember the subject matter of his or her out-of-court statement.

## VI.

### A.

Preliminarily, in support of its holding, the majority cites to several Supreme Court cases which, as in *Fields,* are immaterial insofar as they do not implicate the established jurisprudence construing our state constitution's confrontation clause. Moreover, the assertion that other jurisdictions have reached similar conclusions is wholly irrelevant to Respondent's confrontation claim, which is premised on Hawai'i's constitution. The majority states that, "in *Fields,* this court adopted *Crawford* as this jurisdiction's test for whether a witness appears for cross-examination at trial," and that, "[t]herefore, case law of the United States Supreme Court and other jurisdictions applying *Crawford* is not 'wholly irrelevant[.]'" Majority opinion at 145 n. 14, 238 P.3d at 177 n. 14 (quoting concurring opinion at 157, 238 P.3d at 189).

However, this case is concerned with the federal constitution only insofar as it establishes the minimal protection which must be afforded under our own confrontation clause. *State v. Quino,* 74 Haw. 161, 170, 840 P.2d 358, 362 (1992) (stating that "'as long as we afford defendants the minimum protection

required by federal interpretations of the Fourteenth Amendment to the Federal Constitution, we are unrestricted in interpreting the constitution of this state to afford greater protection'" (quoting *State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967) (brackets omitted))). In fact, "this court [has] not hesitate[d] to extend the protections of the Hawai'i Constitution beyond federal standards." *Sua II*, 92 Hawai'i at 73 n. 8, 987 P.2d at 971 n. 8. Notably, for example, although the Supreme Court has held subsequent to *Roberts* that a showing of unavailability is not required for certain hearsay exceptions, it bears repeating that "this court has remained resolute that under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants." *Id.* at 71, 987 P.2d at 969 (brackets, internal quotation marks, and citations omitted).

Furthermore, under this court's precedent interpreting the Hawai'i Constitution, the proposition that the mere physical presence of a hearsay declarant at trial does not take the defendant out of the realm of protection afforded him or her by the confrontation clause has been established. In *Sua II*, the prosecution offered the grand jury transcript of a witness after the witness stated that he could not remember the testimony that he provided to the grand jury. *Id.* at 65, 987 P.2d at 963. The defendant objected to its admission on the ground that the defendant had not been afforded an opportunity to cross-examine the witness regarding the substance of his grand jury testimony. *Id.* at 65–66, 987 P.2d at 963–64. The circuit court allowed the witness' grand jury testimony to be read to the jury, pursuant to the hearsay exception for prior statements made by witnesses. *Id.* at 66, 987 P.2d at 964.

Although the defendant was physically present at trial, this court did not hold that by virtue of such presence, the confrontation clause of the Hawai'i Constitution was not implicated. Contrarily, this court went on to apply the two-prong test from *Roberts*. It was determined that "[t]he first prong of the *Roberts* test was satisfied" because "*[a]l-*

*though [the hearsay declarant] was present at trial*, [he] was unable to recollect any substantive elements of his grand jury testimony and, therefore, was *'unavailable' by virtue of his loss of memory*." *Id.* at 73, 987 P.2d at 971 (emphases added) (citation omitted).

In analyzing the second prong of *Roberts*, *Sua II* determined that the "grand jury testimony [fell] within a 'firmly rooted hearsay exception,' as 'past recollection recorded,' and therefore [bore] an adequate indicia of reliability[.]" *Id.* (citation omitted). Accordingly, *Sua II* concluded that "the testimony should satisfy the confrontation clause." *Id.* As a means of *"ensur[ing] the highest standard of protection of [the defendant's] constitutional right of confrontation,"* this court went on to decide "whether [the hearsay declarant's] grand jury testimony bore 'particularized guarantees of trustworthiness[,]'" even though under *Roberts*, the confrontation clause is satisfied where the declarant is deemed unavailable and the statement bears sufficient indicia of reliability. *Id.* (emphasis added).

The majority argues that although *Sua II* applied our version of *Roberts*, even though the witness was present at trial for cross-examination, "*Fields* established that a 'fair reading of *Sua [II]* indicates that this court rejected [the defendant's] confrontation clause argument on two independent and *dispositive*, but coequal grounds: (1) both prongs of the *Roberts* test were met; and (2) [the defendant] had a sufficient opportunity for cross-examination." Majority opinion at 149 n. 16, 238 P.3d at 181 n. 16 (emphasis added). In *Fields*, the majority argued that *Sua II*, 92 Hawai'i at 75, 987 P.2d at 973, held that "'[i]nasmuch as [the hearsay declarant's] grand jury testimony met both requirements of the *Roberts* test, *and* [the defendant] was able to cross-examine [the declarant] regarding his failure to remember the alleged incident, we cannot say that the admission of [the declarant's] grand jury testimony violated [the defendant's] right to confrontation.'" *Fields*, 115 Hawai'i at 526, 168 P.3d at 978. Notably, *Carey v. United States*, 647 A.2d 56 (D.C.1994), which *Sua II* cited to in support of the proposition that the

defendant had a sufficient opportunity to cross-examine the declarant, would be contradictory to *Sua II*'s formulation of our version of the *Roberts* test, under which the unavailability prong could be satisfied by a showing of the declarant's loss of memory. The same facts which would make the declarant "unavailable" under *Sua II*'s interpretation of the *Roberts* test would also make the declarant available for cross-examination under *Carey*. The two grounds on which the majority purports *Sua II* was decided cannot co-exist. If the facts of *Carey* were dispositive in *Sua II*, the first prong of this court's version of the *Roberts* test could not have been satisfied. In my view, the conclusion in *Sua II*, that the "unavailability" prong of our version of *Roberts* applied, must be viewed as paramount to the observation that the declarant in that case was present and subject to cross-examination at trial. It is apparent that *Sua II*'s statement that the defendant in that case had a sufficient opportunity for cross-examination did not vitiate the fact that *Sua II*'s discussion in that regard was employed to confirm this court's holding that both prongs of the test adapted from *Roberts* were satisfied; not to supplant that holding.

Moreover, *Sua II* did not state that a hearsay declarant's mere physical presence at trial satisfied the confrontation clause in and of itself. In fact, *Sua II* did not treat the hearsay declarant as "available for cross-examination" as argued in *Fields* and contended to by the majority today. In *Sua II*, this court explained that "[w]e have recognized that the hearsay rule and the confrontation clause are 'generally designed to avoid similar evils; however, it is not correct to surmise that the overlap of the two doctrines of law is so complete that the confrontation clause is nothing more than a codification of the hearsay rules of evidence.'" 92 Hawai'i at 70–71, 987 P.2d at 968–69 (quoting *Apilando*, 79 Hawai'i at 131–32, 900 P.2d at 138–39 (quoting *State v. Faafiti*, 54 Haw. 637, 639, 513 P.2d 697, 700 (1973))). This court noted that "'[c]ommentators have recognized that the confrontation clause encompasses a greater right than an evidentiary rule of exclusion or inclusion and that satisfaction of one does not necessarily result in compliance with the other.'" *Id.* at 71, 987 P.2d at 969

(quoting *Apilando*, 79 Hawai'i at 131–32, 900 P.2d at 138–39). But *Sua II* explained, "while [this court] ha[s] repeatedly recognized the importance of the right of confrontation, we have nonetheless held that a declarant's hearsay may be admitted at trial even though the declarant is unavailable for cross-examination." *Id.* (citations omitted). *Sua II* thus stated that in resolving the foregoing issue, "[t]his court has repeatedly followed the test established in *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531[.]" *Id.*

This court next proceeded to undertake a lengthy discussion regarding the two-prong test, ultimately concluding that both prongs of that test were satisfied. *See id.* at 72–74, 987 P.2d at 971–73. If the defendant's mere physical presence at trial was dispositive, as the majority holds in the instant case, *Sua II*'s analysis regarding the two-prong test is a lengthy and preliminary discussion amounting to dicta—*Roberts* should not have been addressed. Likewise, if, as the majority contends, *Fields* held that the hearsay declarant's physical appearance at trial renders the confrontation clause irrelevant, *Fields* would not have engaged in a lengthy discussion as to whether the defendant's cross-examination was "meaningful" or "sufficient." *See infra.*

It is apparent that to read *Sua II*'s reference to the defendant's sufficient opportunity to cross-examine the hearsay declarant "as more than a circumstantial fact[,] would render *Sua II* internally inconsistent." *Fields*, 115 Hawai'i at 554, 168 P.3d at 1007 (Acoba J., dissenting). As indicated, *Sua II* applied both the two-prong test stemming from *Roberts* and treated that declarant as if he were "unavailable" for cross-examination. 92 Hawai'i at 71, 987 P.2d at 969 (stating that this court "ha[s] nonetheless held that a declarant's hearsay may be admitted at trial even though the declarant is unavailable for cross-examination"). The foregoing cannot be reconciled with an interpretation of *Sua II* as holding as equally dispositive, the fact that the defendant in that case had the opportunity to cross-examine the hearsay declarant.

If, as the majority suggests in the instant case, the confrontation clause is not implicated where a declarant is present at trial for

cross-examination, a demonstration of the declarant's loss of memory would not satisfy the unavailability prong; rather, "unavailability" under our versions of *Roberts* or *Crawford* would be irrelevant in such instances. In sum, this court's confrontation clause jurisprudence necessarily contemplates reaching the two-pronged tests stemming from *Roberts* and *Crawford*, where the hearsay declarant is physically present at trial but suffers from a loss of memory. Clearly, nothing in *Sua II* suggests that the confrontation clause of the Hawai'i Constitution is not implicated where the hearsay declarant is merely physically present at trial for cross-examination, as the majority holds in the instant case.

Additionally, the majority's assertion that the mere presence of the hearsay declarant in *Sua II* satisfied the confrontation clause of the Hawai'i Constitution ignores *Sua II's* express acknowledgment that although a witness may be physically present, " '[u]navailability[, under our version of *Roberts*,] may be demonstrated by a showing of loss of memory.' " *Sua II*, 92 Hawai'i at 73, 987 P.2d at 971 (quoting *Apilando*, 79 Hawai'i at 137, 900 P.2d at 144 (citing *Tsuruda*, 18 Haw. at 438 (ellipsis and brackets omitted) (emphasis in original))).

In *Fields*, the majority attempted to resolve this by stating that it was concluding only that the hearsay declarant in *Fields* "was available for cross-examination" notwithstanding her loss of memory. *Fields*, 115 Hawai'i at 524, 168 P.3d at 976 (citing *id.* at 548, 168 P.3d at 1000 (Acoba, J., dissenting)). The *Fields* majority "emphasize[d], however, that [it was] not conclud[ing] that [the hearsay declarant] was constitutionally 'available' " under our versions of the two-pronged test derived from *Roberts* and *Crawford*, "because that finding is precluded by her claimed loss of memory, in accordance with *Sua [II]*." *Id.* (emphasis omitted). *Fields* undeniably reaffirmed that under *Sua II*, a hearsay declarant's loss of memory renders him or her "unavailable" for the prosecution as a witness under our versions of the *Roberts* and *Crawford* tests.

Notwithstanding the foregoing, under the majority's holding today, a declarant is deemed unavailable at trial for cross-examination only if he or she is not physically present at trial. However, under *Sua II* and under *Apilando* and *Tsuruda*, discussed *supra*, a declarant is deemed "unavailable" where he or she is present at trial to testify but lacks memory as to the subject matter of the hearsay statement. Moreover, despite the majority's disagreement, *Sua II* necessarily requires that the confrontation clause inquiry not end with the hearsay declarant's mere physical presence at trial for cross-examination, and *Fields* confirmed this view.

In any event, even assuming *arguendo*, that *Sua II* "rejected [the defendant's] confrontation clause argument on two independent and dispositive, but coequal grounds[,]" majority opinion at 149 n. 16, 238 P.3d at 181 n. 16, this court has held in other cases that the unavailability prong of *Roberts* may be satisfied by a showing of the declarant's loss of memory. *See e.g. Apilando*, 79 Hawai'i at 137, 900 P.2d at 144 (stating that "[u]navailability may be demonstrated by a showing of a declarant's . . . loss of memory" (emphasis and citations omitted)); *Tsuruda*, 18 Haw. at 438 (stating that "[t]he unavailability of a witness may result from his . . . loss of memory").

As discussed, this court's precedent that the "unavailability" prong of our adaptation of *Roberts* applies where a hearsay declarant is physically present at trial but suffers from a loss of memory should control in the instant case, as opposed to the majority's now expressed view that the confrontation clause is automatically satisfied in such instances. The majority's view, then, that the confrontation clause is not implicated in such instances, thereby rendering the "unavailability" prong entirely irrelevant, clashes with this court's established interpretation of the confrontation clause of the Hawai'i Constitution.

Additionally, it must be noted that, if *Sua II* was decided on two equally dispositive grounds, *see* majority opinion DD3 at 149 n. 16, 238 P.3d at 181 n. 16, the majority does not explain why only one ground was sufficient in *Fields* and is affirmed as sufficient in this case. With all due respect, the majority's approach in the instant case, as in *Fields*, is arbitrary. The majority does not

answer why the defendant in *Fields* did not, or the defendant in this case does not, have the benefit of the protection afforded by the *other* "coequal[ly]" dispositive ground in *Sua II*, i.e., that our version of the two-pronged test which stems from *Roberts* was satisfied. The majority here, as in *Fields*, simply ignores *the* dispositive ground in *Sua II*, which was that the two-pronged test stemming from *Roberts* was satisfied; not that the confrontation clause was not implicated by virtue of the hearsay declarant's mere physical presence on the stand for cross-examination.

## B.

In accordance with the foregoing position, the majority maintains that the position taken in this concurrence was "rejected in *Fields* [,]" asserting that "this court held that Hawaiʻi's confrontation clause 'is not implicated where ... the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement.'" [6] *Id.* at 149 n. 16, 238 P.3d at 181 n. 16 (quoting *Fields*, 115 Hawaiʻi at 517, 168 P.3d at 969). However, the majority incorrectly suggests that *Fields* resolves the issue in this case. *Fields* did not resolve the question of whether admission of a hearsay statement as substantive evidence violates the confrontation clause where the declarant is physically present at trial, but suffers from a complete memory loss as to (1) the night the statement was allegedly made, (2) having made the statement, and (3) the subject matter of the statement. In other words, *Fields* does not stand for the proposition that a hearsay declarant's mere physical presence at trial, not-

withstanding his or her loss of memory, satisfies the confrontation clause in and of itself.

First, *Fields* acknowledged that "[t]he right of confrontation 'affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses.'" 115 Hawaiʻi at 512, 168 P.3d at 964 (quoting *Ortiz*, 74 Haw. at 360, 845 P.2d at 555 (citing *State v. Rodrigues*, 7 Haw.App. 80, 84, 742 P.2d 986, 989 (1987))). "For this reason," *Fields* explained, "the admission of a hearsay statement as substantive evidence of its truth raises special problems whenever the hearsay declarant is unavailable for *meaningful cross-examination* on the witness stand." *Id.* (internal quotation marks and citations omitted) (emphasis added). The *Fields* majority stated that, "[a]s is intuitively obvious, the present matter *turns on whether,* given the circumstances, [the defendant] was afforded a *meaningful opportunity to cross-examine* [the hearsay declarant] about her prior out-of-court statement." *Id.* at 524, 168 P.3d at 976 (emphases added).

*Fields* was not inconsistent with this court's acknowledgment in other Hawaiʻi confrontation clause cases that "chief among the interests secured by the confrontation clause is the right to cross-examine one's accuser." *McGriff*, 76 Hawaiʻi at 155, 871 P.2d at 789 (citing *Roberts*, 448 U.S. at 63, 100 S.Ct. 2531); *accord Sua II*, 92 Hawaiʻi at 70, 987 P.2d at 968. Moreover, this court has explained that cross-examination is the defendant's primary means of confronting witnesses against him. *See, e.g., State v. Peseti*,

---

**6.** Notwithstanding the majority's assertion that *Fields* rejected some of the foregoing arguments, including the proposition that *Fields* itself was inconsistent with *Sua II* and the confrontation clause jurisprudence of this court, positions contained in a concurring or dissenting opinion do not necessarily remain so. *Compare State v. Maugaotega,* 107 Hawaiʻi 399, 114 P.3d 905 (2005), *vacated and remanded by Maugaotega v. Hawaii,* 549 U.S. 1191, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007), *with State v. Maugaotega,* 107 Hawaiʻi at 411, 114 P.3d at 917 (Acoba, J., dissenting, joined by Duffy, J.) (stating that the extended terms of imprisonment should be vacated and the case remanded for resentencing). Moreover, there is no dispute that judges may adhere to a position set forth in a previous con-

curring or dissenting opinion. *See, e.g., United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (Blackmun, J., concurring) (stating that "[m]y dissents in prior cases have indicated my continuing dissatisfaction and discomfort with the Court's vacillation" with respect to the Court's jurisprudence on vehicle searches); *Cioffi v. United States,* 419 U.S. 917, 918 n. 2, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974) (Douglas, J., dissenting, joined by Brennan, J.) ("In my dissent from *Osborn[ v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966),] and elsewhere, I have set forth my view that even prior judicial approval cannot validate intrusions into constitutionally protected zones of privacy for the seizure of mere evidentiary material[.]") (Citation omitted.)

101 Hawai'i 172, 180, 65 P.3d 119, 127 (2003) (stating that " '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested' ") (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). In other words, "[t]he main and essential purpose of the confrontation is to secure for the opponent the opportunity for cross-examination." 5 J. Wigmore, *Evidence in Trials at Common Law* § 1395, at 150 (3d ed. Chadbourn rev.1974) (emphasis omitted). It is not surprising, then, that Respondent asserts he was denied a "meaningful opportunity" to cross-examine the complainant, in violation of his right to confrontation under the Hawai'i Constitution. *See supra.*

Indeed, *Fields* indicates it is "intuitively obvious[,]" under our confrontation clause jurisprudence, that where a hearsay declarant is physically present at trial for cross-examination, but suffers from a loss of memory, whether or not the confrontation clause is satisfied "turns on whether . . . [the defendant] was afforded a meaningful opportunity to cross-examine [the hearsay declarant] about her prior out-of-court statement." 115 Hawai'i at 524, 168 P.3d at 976. In that connection, *Fields* engaged in a lengthy analysis of the hearsay declarant's cross-examination, stating that "[o]n cross-examination, however, [the hearsay declarant] willingly and informatively responded to virtually all of the questions posed by Fields' counsel." *Id.* at 523, 168 P.3d at 975. In *Fields,* the majority asserted that although the complaining witness claimed memory loss as to her prior statement,

> [she] was able to recall that (1) [the defendant's friend] was present during the incident, and (2) during the incident she was "laying on [the defendant's] surfboard" while it was positioned "between the table and the chair" and that she threatened to sit on it and break it if [the defendant] left the premises. She further testified, on cross-examination, that her memory loss as to other portions of the incident could have been caused by the fact that she drank "a

lot" of beer on the evening of the incident in question.

*Id.* Following the foregoing recitation of the complaining witness' cross-examination testimony, the *Fields* majority stated that, "we hold that the admission of [the complaining witness'] out-of-court statement did not violate Hawai'i's confrontation clause *inasmuch as [the defendant] was afforded a sufficient opportunity* to cross-examine [the complaining witness] about her prior statement at trial." [7] *Id.* at 523–24, 168 P.3d at 975–76 (emphasis added). The majority reasoned that "[t]he trier of fact was provided with adequate information to test the credibility and veracity of [the complaining witness'] prior statement" because the jury could have "reasonably inferred that (1) [the complaining witness'] drunken state rendered her prior statement inaccurate or unreliable, and/or (2) [the complaining witness] was not an innocent victim but an aggressive participant in the incident who, while angry at [the defendant], gave a false statement to the police." *Id.* at 523, 168 P.3d at 975.

If, under *Fields,* the confrontation clause is not implicated where the hearsay declarant is physically present at trial for cross-examination, the *Fields* majority would not have, and should not have, engaged in the foregoing analysis of the cross-examination of the hearsay declarant. Thus, *Fields* requires a determination as to whether the cross-examination was "meaningful," or at least "sufficient" to satisfy the confrontation clause. If the cross-examination in *Fields* was merely "sufficient," the cross-examination in the instant case surely was not. The only testimony pertaining to the complainant's hearsay statement in this case was as follows:

> Q [DEFENSE COUNSEL]. Now, . . . I'd like to turn your attention to March 26th, 2008.
>
> What happens at approximately 1 a.m. in the morning? What, if anything, happens on that date?
>
> A. I don't remember.

---

7. In my view, in *Fields,* the cross-examination was neither sufficient nor meaningful inasmuch as "[n]othing in [the declarant's] testimony, either on direct or cross-examination, corresponded[ed] to [the officer's] testimony about [the] accusatory hearsay statement." *Fields,* 115 Hawai'i at 560, 168 P.3d at 1012 (Acoba J., dissenting).

Q. Do you remember calling the police on that date?

A. I don't remember.

Q. Do you remember writing a statement for the police?

A. I don't remember.

. . . .

Q. Now, I'd like to turn your attention to March 26th, 2008. You just testified that you don't remember as to what happened?

A. No. Correct.

In relevant part, the cross-examination of the complainant was as follows:

Q. [Complaint], you say you don't remember. Why don't you remember?

A. I drink a lot. I've had this happen to me before. . . .

Q. Okay. So you drank a lot. Do you have any idea how much you drank that night?

A. I don't remember.

Q. But you do remember beginning the night drinking?

A. Yes.

. . . .

Q. Okay. Where were you drinking?

A. It started off at the hotel and then at the bar. And the last thing I remember, we were at the bar.

Q. That's all you remember?

A. That's all I remember.

Unlike the complaining witness in *Fields*, who was able to remember parts of the incident, including the presence of the defendant's friend during the incident, and having threatened to break the defendant's surfboard, the complainant in the instant case was unable to remember anything that occurred on the night in question. The trier of fact was not provided with any "information to test the credibility and veracity of [the complainant's] prior statement." *Id.* In fact, the trier of fact was not provided with any information even remotely related to the subject matter of the statement.

### C.

In my view, "[t]he question is not whether a defendant is guaranteed a 'successful cross-examination,' *Sua II*, 92 Hawai'i at 75, 987 P.2d at 973, but whether the opportunity afforded to cross-examine a witness is a real one or not[,]" *Fields*, 115 Hawai'i at 548, 168 P.3d at 1000 (Acoba J., dissenting). Where a hearsay declarant is unable to remember (1) any of the events which occurred on the night the alleged statement was made, (2) the subject matter of the alleged hearsay statement, and (3) having made such a statement, there is no "real" or "sufficient," much less "meaningful" opportunity for cross-examination. Accordingly, in the instant case, the majority further "strips any significance from the phrase 'meaningful opportunity to cross-examine[,]'" thereby "render[ing] cross-examination on the hearsay statement meaningless, rather than meaningful." *Id.* at 560, 168 P.3d at 1012 (Acoba J., dissenting).

Finally, assuming *arguendo*, that *Fields* does not require "meaningful cross-examination," *Fields* indicates at the very least that cross-examination sufficient to satisfy the confrontation clause requires that the declarant be able to recall the subject matter of his or her statement. *See id.* at 526 n. 13, 168 P.3d at 978 n. 13 (stating that "*the dispositive question becomes whether the witness can nevertheless recall the subject matter of the statement,* notwithstanding the loss of memory as to the statement itself") (emphasis added). Because the complainant in this case was unable to recall the subject matter of her out-of-court statement, she cannot be deemed to have appeared for cross-examination such that the confrontation clause was not implicated.

### VII.

#### A.

The majority in fact concedes that "*Fields* is ambiguous regarding whether a witness must recall the subject matter of her statement[.]" Majority opinion at 145, 238 P.3d at 177. According to the majority, however, "[this court's] adoption [in *Fields* ] of *Crawford* [,] as the test for whether a witness 'appears at trial for cross-examination'" "re-

solves this ambiguity." *Id.* (citation omitted). The majority maintains that Respondent's argument that *Fields* indicates that " 'the dispositive question becomes whether the witness can nevertheless *recall the subject matter of the statement,* notwithstanding the loss of memory as to the statement itself' " "is not persuasive because language in *Fields* also supports concluding that a witness need not recall the subject matter of her statements to appear for cross-examination at trial[.]" *Id.* at 144, 238 P.3d at 176 (quoting *Fields* 115 Hawai'i at 526 n. 13, 168 P.3d at 978 n. 13).

Preliminarily, this court did not "adopt" *Crawford* in *Fields*. Rather, this court was *required* to follow the test set forth in *Crawford* regarding the admissibility of *testimonial statements* of an unavailable declarant. In *Fields,* the majority explained that "*Crawford* fundamentally alters our own analysis of article I, section 14 of the Hawai'i Constitution[.]" 115 Hawai'i at 516, 168 P.3d at 968. The *Fields* majority read *Crawford* to

> unequivocally require that the admissibility of testimonial hearsay be governed by the following standard: *where a hearsay declarant's unavailability has been shown, the testimonial statement is admissible for the truth of the matter asserted only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement.*

*Id.* (citing *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354) (emphasis added).

*Fields'* determination that the Hawai'i confrontation clause "is not implicated where . . . the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement[,]" was based on *this court's* interpretation of *Crawford. See id.* at 517, 168 P.3d at 969. According to the *Fields* majority, *Crawford* "le[ft] no room for doubt that the federal confrontation clause is not concerned with the admission of an out-of-court statement where the declarant appears at trial and is cross-examined about that statement." *Id. Fields* based that conclusion on a footnote in *Crawford* which stated that " 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his

prior testimonial statements . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.' " *Id.* (quoting *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354). But, as discussed *supra, Fields* indicates that such "appear[ance] for cross-examination," *id.,* sufficient to satisfy the confrontation clause requires cross-examination that is meaningful, and that the defendant be able to recall the subject matter of his or her statement. Here, neither is satisfied. Moreover, with respect to footnote 9 in *Crawford,* a declarant who suffers from a loss of memory at trial cannot defend or explain his or her prior out-of-court statement.

## B.

The foregoing indicates that *Fields* is ambiguous precisely because, on the one hand, *Fields* indicated that "Hawai'i's confrontation clause . . . is not implicated where . . . the hearsay declarant attends trial and is *cross-examined* about his or her prior out-of-court statement." *Id.* Yet, on the other hand, *Fields* also indicated that "cross-examination" requires "a meaningful opportunity to cross-examine the declarant about the subject matter of that statement[.]" *Id.* at 528, 168 P.3d at 980; *see also id.* at 526 n. 13, 168 P.3d at 980 n. 13. Simply favoring one of the ambiguous statements does not, as the majority maintains, resolve *Fields'* ambiguity, or render Respondent's argument based on the other statement unpersuasive. *See* majority opinion at 144–45, 238 P.3d at 176–77

Notwithstanding its acknowledgment of the foregoing ambiguity, the majority states that it "reject[s]" an interpretation of *Fields* that requires that cross-examination sufficient to satisfy the confrontation clause be meaningful and about the subject matter of the statement. *Id.* at 145, 238 P.3d at 177. In support of its rejection, the majority reasons that its "conclusion is supported by United States Supreme Court precedent, the precedent of other jurisdictions applying *Crawford,* and the policies espoused in *Fields.*" *Id.* at 145, 238 P.3d at 177. The majority maintains that because this court has "relied on *Crawford* in determining

whether a witness appears for cross-examination at trial[,] ... the Supreme Court's construction of the federal confrontation clause is persuasive[.]" *Id.* at 145, 238 P.3d at 177.

To reiterate, this case is concerned with the federal constitution only insofar as it establishes the minimal protection which must be afforded under our own confrontation clause. Beyond that "this court [has] not hesitate[d] to extend the protections of the Hawai'i Constitution beyond federal standards." *Sua II*, 92 Hawai'i at 73 n. 8, 987 P.2d at 971 n. 8. We have departed from Supreme Court precedent in favor of affording the citizens of Hawai'i broader protection under the Hawai'i confrontation clause. *See supra.* The majority's adoption of the federal approach regarding the confrontation clause significantly diminishes the protections afforded under our state constitution and invites inconsistent and unjust consequences from the uneven application of the law. As discussed below, the majority's holding today creates two alternative and irreconcilable bases for "cross-examination," thereby further injecting arbitrariness into criminal trials.

## VIII.

### A.

It must be emphasized that in the instant case, the statement, "[M]y boyfriend beat me up," was admitted into evidence for its substantive truth. HRE Rule 802.1(1) (1993) similarly permits the admissibility of a prior inconsistent statement as substantive evidence. However, such admissibility requires, *inter alia*, that "[t]he declarant is subject to cross-examination concerning the subject matter of the declarant's statement." HRE 802.1(1).

The commentary notes that "[b]ecause the witness is *subject to cross-examination*, the substantive use of his prior inconsistent statements does not infringe the sixth amendment confrontation rights of the accused in criminal cases." Commentary to HRE 802.1 (1993). According to the commentary, one is "subject to cross-examination" where he or she "testifie[s] about [the]

event and his [or her] prior written statement also describes th[at] event[.]" *Id.*

Likewise, in *State v. Canady*, 80 Hawai'i 469, 478, 911 P.2d 104, 113 (App.1996), the ICA rejected *United States v. Owens*, 484 U.S. 554, 561, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), insofar as it concluded that under the federal counterpart to HRS 802.1(1), a witness is "subject to cross-examination" when he or she " 'is placed on the stand, under oath, and responds willingly to questions,' even if the witness was unable to testify about any of the events set forth in the prior statement." *Canady* stated:

> The commentary to HRE Rule 802.1 explains that under the common law, prior inconsistent statements were considered hearsay and could not be used to impeach a witness. Commentary to HRE Rule 802.1 (1993). The [Federal Rules of Evidence (FRE)] modified the common-law rule and allowed prior inconsistent statements to be used as substantive proof of the matters asserted in the statement, if the statement was " 'given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.' " *Id.* (quoting FRE Rule 801(d)(1)(A)). HRE Rule 802.1 adopted this federal exception to the common law, and went further by adding two more exceptions to the hearsay objection for signed or adopted statements and recorded statements. *Id.*

80 Hawai'i at 480, 911 P.2d at 115.

*Canady* further concluded that "HRE Rule 802.1(1) requires more of the witness than just that he or she be 'placed on the stand, under oath and respond willingly to questions.' " *Id.* (quoting *Owens*, 484 U.S. at 561, 108 S.Ct. 838) (brackets omitted). Accordingly, the ICA held that in order for a hearsay statement to be admissible as substantive evidence, HRE Rule 802.1(1) requires "that the witness be subject to cross-examination about the subject matter of the prior statement, that is, that the witness be capable of testifying substantively about the event, allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial[.]" *Id.* at 480–81, 911 P.2d at 115–16. *State v. Eastman,* 81

Hawai'i 131, 137, 913 P.2d 57, 63 (1996), confirmed that HRE 802.1(1) "requires ... a witness must testify about the subject matter of his or her prior statements so that the witness is subject to cross-examination concerning the subject matter of those prior statements[.]"

*"Canady* and *Eastman* reveal the flaw in *Owens. A witness without memory is the virtual equivalent of an absent witness."* Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 802.1–2[1] (2006 ed.) (emphasis added). Thus, "the policy basis of the hearsay exception for prior statements of witnesses—that they can be cross-examined about relevant events—hardly extends to the admission of hearsay relating material they no longer remember." *Id.* As explained, where "the witness can be cross-examined *about the event and the statement,* the trier or fact is free to credit [the witness'] present testimony or his prior statement in determining where the truth lies." *Id.* (quoting commentary to HRE 802.1) (emphasis added).

The commentary to HRE 802.1 suggests that the same definition of the phrase "subject to cross-examination" should be employed for purposes of the confrontation clause. *Sua II* corroborated this precept, as evidenced by the following language:

> "[The defendant] relies on *Canady* for the assertion that 'a witness that is unable to recall the events allegedly described in the prior statement does not satisfy the requirements of HRE Rule 802.1, and therefore the prior statement would not be admissible.' In *Canady,* the complaining witness 'testified that she could not recall the events that she allegedly described in the statement.' 80 Hawai'i at 481, 911 P.2d at 116. *In the present matter, [the witnesses and hearsay declarants] denied ever having made the relevant statements.... Therefore, unlike the witness in Canady, who was rendered 'unavailable' by virtue of her memory loss, [the declarants] were both 'available' for cross-examination. Accordingly, while we agree with [the defendant's] reading of Canady,* it is inapposite to the present matter."

*Fields,* 115 Hawai'i at 557–58, 168 P.3d at 1009–10 (Acoba, J., dissenting (quoting *Sua II,* 92 Hawai'i at 77, 987 P.2d at 975 (emphasis in original))). Similarly, immediately following the explanation of what is envisioned by the phrase "subject to cross-examination," the commentary to HRE 802.1 states that "[b]ecause the witness is subject to cross-examination, the substantive use of his prior inconsistent statements does not infringe the sixth amendment confrontation rights of accused in criminal cases."

In *Eastman,* this court likewise held that both *"constitutional and trustworthiness concerns* over admitting [a hearsay declarant's] prior inconsistent statements ... into evidence" are satisfied where "the cross-examination [gives the defendant] the opportunity to have [the declarant] fully explain to the trier of fact why her in-court and out-of-court statements [are] inconsistent, which, in turn, enable[s] the trier of fact to determine where the truth [lies]." 81 Hawai'i at 139, 913 P.2d at 65 (emphasis added); *see also State v. Clark,* 83 Hawai'i 289, 294, 926 P.2d 194, 199 (1996) (stating that under HRE 802.1 " 'the substantive use of [a hearsay declarant's] prior inconsistent statements does not infringe the sixth amendment confrontation rights of accused in criminal cases,' " because the " 'witness can be cross-examined about the event and the statement' " (quoting *Eastman,* 81 Hawai'i at 136, 913 P.2d at 62)) (citations omitted). To reiterate, "[a] witness without memory is the virtual equivalent of an absent witness[,]" and thus, the precept underlying the admission of hearsay—that witnesses can be "cross-examined about relevant events—hardly extends to the admission of hearsay relating material they no longer remember." Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 802.1–2[1] (2006 ed.).

*"Eastman* and *Clark* indicate that, consistent with the *Sua II* paradigm, the requirement under HRE Rule 802.1 that the declarant be 'subject to cross-examination concerning the subject matter of the statement' ... satisf[ies] the confrontation clause requirement as well." *Fields,* 115 Hawai'i at 558–59, 168 P.3d at 1010–11 (Acoba J., dissenting). Moreover, "[o]ur jurisprudence has confirmed on evidentiary

and constitutional grounds, the proposition that a witness who cannot recall the events related in the hearsay statement is to that extent not subject to cross-examination so as to allow the 'trier of fact ... to determine[ ] where the truth lies.'" *Id.* at 559, 168 P.3d at 1011 (Acoba J., dissenting) (quoting *Sua II,* 92 Hawai'i at 77, 987 P.2d at 975 (citation omitted (brackets and ellipsis in original))).

As discussed, in accordance with the foregoing, *Fields* likewise stated that in instances where a hearsay declarant suffers from a loss of memory, *"the dispositive question becomes whether the witness can nevertheless recall the subject matter of the statement,* notwithstanding the loss of memory as to the statement itself." *Id.* at 526 n. 13, 168 P.3d at 978 n. 13 (emphasis added). *Fields* further declared that where "the accused has the opportunity to elicit the witness' testimony as to the *subject matter of the statement on cross-examination at trial,* the accused's right of confrontation has been satisfied." *Id.* (emphasis added). According to *Fields,* then, the Hawai'i Constitution requires that the declarant must be able to at least recall the subject matter of the statement itself. Thus, in my view, the majority's holding that the confrontation is satisfied even in instances where the "declarant cannot remember either making the statements *or the content of the statements,*" majority opinion at 147, 238 P.3d at 179 (citation omitted) (emphasis added), is an unwarranted disregard of the precedent of this court. In justifying its departure from precedent, the majority points only to cases from the Supreme Court and other jurisdictions, all of which, to reiterate, do not control the confrontation clause jurisprudence of the Hawai'i Constitution.[8]

### B.

Ironically, notwithstanding the fact that this jurisdiction has rejected *Owens'* conclusion that "cross-examination" requires only that the declarant be " 'placed on the stand, under oath, and respond[ ] willingly to ques-

tions' " for purposes of HRE Rule 802.1, *see Canady,* 80 Hawai'i at 478, 911 P.2d at 113 (quoting *Owens,* 484 U.S. at 561, 108 S.Ct. 838), the majority adopts that very definition of "cross-examination" for purposes of the confrontation clause. The majority in fact cites to *Owens,* in concluding that the confrontation clause is not implicated where the witness is physically present on the stand for cross-examination. *See* majority opinion at 146–47, 238 P.3d at 178–79. Consequently, in this jurisdiction, *Owens'* interpretation of "cross-examination" has been rejected for purposes of the HRE but accepted for purposes of the Hawai'i confrontation clause.

This is plainly inconsistent with both *Canady* and *Eastman,* which make clear that "cross-examination" under HRE Rule 802.1 requires "that the witness be subject to cross-examination about the subject matter of the prior statement." *Canady,* 80 Hawai'i at 480–81, 911 P.2d at 115–16; *accord Eastman,* 81 Hawai'i at 137, 913 P.2d at 63. *Fields* likewise stated that with respect to cross-examination under the confrontation clause, "the dispositive question becomes whether the witness can nevertheless recall the subject matter of the statement, notwithstanding the loss of memory as to the statement itself." *Fields,* 115 Hawai'i at 526 n. 13, 168 P.3d at 978 n. 13 (emphasis added). Thus, *Fields* seemingly adopted at least a similar test for determining whether a witness appears at trial for cross-examination. In the instant case, the majority simply holds that although *Fields* is ambiguous, "under *Crawford,* a witness who appears at trial and testifies satisfies the confrontation clause" in and of itself. Majority opinion at 145, 238 P.3d at 177. Clearly, there is no rational basis for making this distinction in light of our established case law.

### C.

The majority's holding establishes in this jurisdiction, two conflicting rules regarding cross-examination depending solely on whether the hearsay statement sought to be

---

8. The majority states that "the commentary to HRE Rule 802.1, on its own, cannot bind this court's construction of a constitutional provision." Majority opinion at 149, 238 P.3d at 181 (footnote omitted). The majority plainly ignores that *Fields, Clark,* and *Eastman* confirm the commentary.

admitted amounts to a prior inconsistent statement. In other words, the protection afforded by cross-examination under the confrontation clause of the Hawai'i Constitution randomly rests on the hearsay exception advanced for the subject statement. In instances where the prosecution seeks to admit a hearsay statement as substantive evidence *and* such statement qualifies as a prior inconsistent statement under HRE Rule 802.1(1), the witness must "be subject to cross-examination about the subject matter of the prior statement, that is, that the witness be capable of testifying substantively about the event, allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial[.]" *Canady,* 80 Hawai'i at 480–81, 911 P.2d at 115–16. On the other hand, where the prosecution seeks to admit a hearsay statement as substantive evidence which does not amount to a prior inconsistent statement, the defendant need not remember having made the statement or the subject matter of the statement; his or her mere presence on the stand is sufficient as a basis for admitting the statement. The right to cross-examination, the hallmark of the confrontation clause, is now parceled out on an entirely arbitrary basis. *See McGriff,* 76 Hawai'i at 155, 871 P.2d at 789 (citing *Roberts,* 448 U.S. at 63, 100 S.Ct. 2531).

According to the majority, in the instant case, the complainant was subject to cross-examination although the complainant could not be cross-examined about the subject matter of the statement. Had the complainant in this case made a prior inconsistent statement, the declarant would not be deemed to have been subject to cross-examination because of loss of memory. *See Canady,* 80 Hawai'i at 480–81, 911 P.2d at 115–16. Hence, the same loss of memory results in two conflicting results. The inability to cross-examine the declarant regarding the subject matter of the hearsay statement bars the admission of the statement in one hearsay situation, but the same inability to cross-examine is irrelevant to the admissibility of the statement in another hearsay situation. It is apparent, then, that the right to cross-examination hinges solely on the chance that

the prior inconsistent statement exception to the hearsay rule applies.

The foregoing distinction cannot be rationally justified. Indeed, the confrontation clause is not a mere codification of the hearsay rules of evidence. *See Apilando,* 79 Hawai'i at 131, 900 P.2d at 138 (quoting *Faafiti,* 54 Haw. at 639, 513 P.2d at 700). As noted before, "[c]ommentators have recognized that the *confrontation clause encompasses a greater right than an evidentiary rule* of exclusion or inclusion[,] and that satisfaction of one does not necessarily result in compliance with the other." *Id.* at 132, 900 P.2d at 139 (emphasis added). This court has thus acknowledged that "[t]he Confrontation Clause embodies notions of individual rights far broader than the technical hearsay rules." *Id.* Paradoxically, under the majority's decision today, the confrontation clause of the Hawai'i Constitution provides less protection than the HRE.

With all due respect, the majority contorts the language of our case law and ignores the precedent of this court in an effort to align our confrontation clause with its less protective federal counterpart. The ramifications, however, bode ill for the vitality of Hawai'i's confrontation clause and our prior insistence that the right to confrontation secures the defendant's right to an opportunity to cross-examine the declarant regarding the subject matter of his or her prior out-of-court statement.

## IX.

The discussion above reveals that under our confrontation clause jurisprudence, a hearsay declarant is not available at trial for cross-examination where he or she is physically present at trial, but unable to remember the subject matter of his or her out-of-court statement. Accordingly, I would hold that the declarant in the instant case was not available for cross-examination. As previously discussed, where a declarant is deemed unavailable for cross-examination at trial, it must be determined whether the hearsay statement was testimonial or non-testimonial in nature. In the instant case, the statement, "[M]y boyfriend beat me up," was non-testimonial. Additionally, the statement is

an excited utterance that is a firmly rooted hearsay exception. Therefore, both prongs of our version of the two-prong test from *Roberts* are satisfied. Because both prongs were satisfied, the admission of that statement did not violate the confrontation clause of the Hawai'i Constitution. Thus, although I disagree with the majority's view of the confrontation clause, I nevertheless concur in the result.[9]

---

9. While I reach the same outcome as the majority in the instant case, it is evident that the majority's holding is particularly troubling where the prosecution seeks to admit testimonial hearsay statements. Now, under the majority's position, where the declarant of a testimonial hearsay statement is physically present at trial but suffers from a loss of memory, the confrontation clause is automatically satisfied, without any regard as to whether the defendant had any meaningful, much less "real" opportunity to cross-examine the declarant. According to the majority, the confrontation clause is not even implicated in those instances. Thus, in such cases, the defendant will not be afforded the safeguard that the "defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement." *Fields*, 115 Hawai'i at 516, 168 P.3d at 968 (citing *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354).